Roger LUDER, Garth Anacker, James Armson, William Arvidson, Kathy Ayers, Raymond Bandeko, Jr., Bryon Bass, Victoria Bass, Daniel Bavinck, Randall Becker, John Bell, Leonard Below, Raymond Berglund, Keith Bloss, Trevor Boardman, Mary Bobiak, Brian Bonovetz, Kenneth Bortz, Jr., Anthony Brauner, Roger Brickner, Christine Brooks, Patrick Burroughs, Todd Calkins, Judy Cimaroli Douglas Crary, Richard Dahnert, Judith Delfrate, Curtis Delong, Roberta Devries, Dana Dittberner, Daniel Dittberner, Donald Dittberner, David Dolajeck, Richard Dolajeck, Raymond Doucette, Scott Droste, Richard Dykstra, Richard Ellet, David Ewing, Timothy Fredette, Gary Fulmer, Gary Gove, Russell Graack, William Graham, William Greene, Dennis D. Hazel, Richard Helley, Donald Hendrickson, Timothy Higbee, Linda Hinickle, Matthew Hinze, Linda Hodgkins, Jeffery Hoffman, Mark Holden, John Holton, Mark Isaacson, Timothy Jackson, David James, Dale Jarvi, Dennis Johnson, Mark Johnson, Charles Jones, Patricia Jones, Charles Kalina, Stephen Kaminski, Ronald Kast, Wesley Katsma, Anthony Kavcich, Dennis Kerl, John Kind, Neil Knapton, Jody Kolano, Rodney Lablanc, Terry Leege, David Lehman, Robert Lettman, David Lipinski, Carol Luetkens, James Luetkens, Charles Lulling, Stan Maday, Brian Martin, Robert Mawbey, Patrick May, Dennis Mays, Jr., William Meiller, Sherry Mikulak, Raymond Millonig, Jr., Robert Morrin, Teresa Mueller, Robert Munro, Lester Neuman, Christopher Olson, Jon Patzlsberger, Dale Paul, Deborah Pero, Christian Petersen, Lee Pillsbury, Blaine Ponkow, Ross Pope, Patrick Pulley, Alan Pulver, Melvin Pulver, Dylon Radtke, Alan Rhode, Kelly Rickey, Michael Rickey, John Rought, Kally Ryan, Roy Salzwedel, Christopher Saviano, John Sawyer, Jr., Ha-

rold Schmidt, Raye Schneller, David Schubring, Steven Severson, John Shimpach, Jennifer Sickinger, Michael Slaney, James Slovik, Frank Smiley, Jr., Richard Solis, Randy Sprangers, Wayne Steiner, James Stone, Ron Swenson, Brian T. Synnott, Daniel Tetzlaff, Ronald Tetzlaff, Terry Tetzlaff, John Thalacker, Maury Thill, Rory Thomas, Victor Trimble, Kelly Turner, Peter Walker, Susan Wall, Todd Wanta, David Warnke, Christina Wech, Daniel Wech, Richard Wech, John Whyte, Peter Wigglesworth, David Yatalese, Plaintiffs,

v.

Jeffrey P. ENDICOTT, Kim E. Kannenberg, Frances M. Paul, Bruce J. Schneider, Individually and in their official capacities, Defendants.

No. 99–C–694–C.

United States District Court,
W.D. Wisconsin.

Feb. 14, 2000.

Lester Pines, Madison, WI, for plaintiff.

Richard Moriarty, Assistant Attorney General, State of Wisconsin, Madison, WI, for defendant.

## OPINION AND ORDER

CRABB, District Judge.

Plaintiffs, employees of the state of Wisconsin, filed this complaint in Dane County Circuit Court, contending that defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201–219, by requiring plaintiffs to perform essential job duties without compensation before and after their work shifts. Plaintiffs seek declaratory, injunctive and monetary relief. Defendants removed the case to this court on November 1, 1999. Defendants have moved to dismiss the complaint on the grounds that only monetary relief is available to plaintiffs under the Fair Labor Standards Act, that Wisconsin and its agencies are immune from suit under the Fair Labor Standards Act and that defendants in their individual capacities are not proper defendants under the act.

This case raises important issues of sovereign immunity and the extent to which individual state employees may be liable personally for actions they take in violation of federal law. It is before the court on procedural issues only; defendants have not moved to dismiss the complaint on the merits. I conclude that the question of employer status under the Fair Labor Standards Act must be decided first, before the question of immunity, and that defendants qualify as employers under the Fair Labor Standards Act in both their individual and official capacities. I also conclude that injunctive relief is not available to plaintiffs under the act and that, as a consequence, plaintiffs' claims against defendants in their official capacities are barred by the Eleventh Amendment. Finally, I conclude that the individual capacity claims are not barred by the Eleventh Amendment and that plaintiffs may pursue monetary relief against defendants personally.

For the sole purpose of deciding this motion, I find as fact the following allegations of the complaint.

## ALLEGATIONS OF FACT

At all relevant times, each plaintiff was an hourly employee of the state of Wisconsin, working at Columbia Correctional Institution, a Wisconsin penitentiary. Defendants, too, are employees who worked at Columbia Correctional Institution at relevant times: defendant Jeffrey P. Endicott as warden, defendant Frances M. Paul as deputy warden, defendant Bruce J. Schneider as institutional human resources director-personnel manager and defendant Kim E. Kannenberg as institutional human resources director. Defendants controlled and directed the terms and conditions of plaintiffs' employment at Columbia Correctional Institution, including hiring, firing, disciplining, timekeeping, recordkeeping, job duties and their execution, pay, overtime and work hours.

For at least three years before the filing of this action and continuing to the present, defendants have required plaintiffs to perform essential job duties without compensation before the start of their shifts or after their shifts should have ended. Because of this, plaintiffs have not been compensated for all of the hours they have worked, including overtime hours. The essential job duties defendants have required plaintiffs to perform while "not on the clock" include reporting to shift supervisors and listening to oral presentation of shift briefs and roll call announcements from supervisors, which are made before the start of the shift; reading the written shift brief prior to the start of the shift; checking, inventorying and caring for essential equipment such as guns, keys, handcuffs and other restraints before or following the shift; communicating with the prior shift staff member or the next shift staff member to provide information essential to the health and safety of inmates, staff members and the citizens of the state; lengthy travel from central control to and from the assigned post; waiting to be relieved of their posts by the following shift staff; collecting and reviewing work-related written communications; and other "make-ready," pre- and post-shift work.

Defendants, or personnel acting at defendants' direction, have knowingly and willfully altered the time sheets of various plaintiffs by crossing out the actual start and end times reported by the employee and writing in the shift start and end times. Defendants have knowingly and willfully allowed plaintiffs to work without compensation. Defendants' actions have resulted in the state of Wisconsin's failure to pay plaintiffs all of the straight time and overtime compensation due them.

Defendants acted in both their official and individual capacities. When acting in their official capacities, defendants acted in a supervisory or decision making capacity with the power or authority of agents of the state to control and direct the terms or conditions of plaintiffs' employment. Defendants Endicott, Paul and Kannenberg continue to require plaintiffs to perform essential job duties while not on the clock and continue to alter or direct the alteration of plaintiffs' time sheets. (Defendant Schneider is no longer at Columbia Correctional Institution.)

## OPINION

### I. TYPES OF RELIEF AVAILABLE TO PLAINTIFFS

■ The parties agree that back wages and liquidated damages are remedies available to plaintiffs should they prove both that defendants are not immune from suit as state employees and that they violated the Fair Labor Standards Act. The parties disagree whether prospective injunctive relief is an available remedy. The Court of Appeals for the Seventh Circuit has not yet addressed the issue. *See Avitia v. Metropolitan Club of Chicago, Inc.*, 924 F.2d 689, 691–92 (7th Cir.1991) (noting in a footnote that "the statutory question at issue is a significant one, and not without sensible arguments on both sides").

29 U.S.C. § 217 provides that district courts have jurisdiction to issue injunctions restraining violations of the act. However, § 217 is limited by 29 U.S.C. § 211(a),

which states: "Except as provided in section 212 of this title [dealing with child labor], the Administrator shall bring all actions under section 217 of this title to restrain violations of this chapter." In an opinion that is persuasive although not binding on this court, the District Court for the Northern District of Illinois noted recently that "every Circuit that has addressed the issue over a period spanning more than a half century has agreed that the plain language of [the Fair Labor Standards] Act §§ 211(a) and 217 allows only the Secretary of Labor to bring an action for injunctive relief under the act." *Bjornson v. Daido Metal U.S.A., Inc.*, 12 F.Supp.2d 837, 843 (N.D.Ill.1998) (citing *Powell v. State of Florida*, 132 F.3d 677, 678–79 (11th Cir.1998); *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 750 F.2d 47, 51 (8th Cir.1984); *EEOC v. Gilbarco, Inc.*, 615 F.2d 985, 995 (4th Cir.1980); *Morelock v. NCR Corp.*, 546 F.2d 682, 688 (6th Cir.1976), *rev'd on other grounds*, 435 U.S. 911, 98 S.Ct. 1463, 55 L.Ed.2d 503 (1978); *Powell v. Washington Post Co.*, 267 F.2d 651, 652 (D.C.Cir.1959); *Roberg v. Henry Phipps Estate*, 156 F.2d 958, 963 (2d Cir.1946); *Bowe v. Judson C. Burns, Inc.*, 137 F.2d 37, 39 (3d Cir.1943)). In *Bjornson*, the court acknowledged the Seventh Circuit's dictum in *Avitia* but concluded that the overwhelming line of authority indicated that private parties were limited to back wages and liquidated damages under the Fair Labor Standards Act. *See Bjornson*, 12 F.Supp.2d at 843.

■ The statutory language indicates that only the Secretary of Labor may pursue claims for injunctive relief. Plaintiffs appear to concede this point in their brief by failing to cite any authority to support their right to sue for injunctive relief. To the extent an accounting and declaratory judgment would be necessary to determine the amount of any back wages owed to plaintiffs under the Fair Labor Standards Act, those remedies can be ordered by the court in the process of determining the appropriate damages. However, plaintiffs' request that this court "[o]rder Defendants to take remedial measures to prevent future [Fair Labor Standards Act] violations" is a request for injunctive relief and must be denied. The denial is of little practical consequence; should defendants be found liable under the Fair Labor Standards Act, such a judgment is almost certain to have the deterrent effect plaintiffs seek through injunctive relief.

## II. THE FAIR LABOR STANDARDS ACT'S DEFINITION OF "EMPLOYER"

### A. *Effect of Consent Forms Signed by Plaintiffs*

■ Before discussing who qualifies as an employer under the Fair Labor Standards Act, I will address defendants' argument that plaintiffs have defeated their own claim. Plaintiffs admit that they are employees of the state of Wisconsin. *See* Compl. ¶ 1. Defendants point out that the consent forms attached to the complaint indicate the plaintiff signatories thought they were suing a single employer: "I believe that my rights ... may have been violated by my *employer*. Therefore, I consent to becoming a party plaintiff ... in a lawsuit against my *employer*.... I hereby request that the court assess any costs and expenses of this action and reasonable attorneys fees against my *employer* ... I understand that under the [Fair Labor Standards Act], I cannot be discharged or in any way disciplined or penalized by my *employer* or *its* agents...." (italics added). In *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 2246, 144 L.Ed.2d 636, decided June 23, 1999, the Supreme Court held that Congress could not subject nonconsenting states to private suits for damages even in their own courts. It appears that plaintiffs' counsel were preparing the complaint and obtaining consent forms from the individual plaintiffs at the time that *Alden* was decided; the consent forms suggest that plaintiffs intended to sue only the Wisconsin Department of Corrections. The *Alden* decision alerted plaintiffs to the futility of pursuing a remedy against a state agency; subsequently,

plaintiffs named as defendants individual state officials, in both their individual and official capacities. The waivers were signed between June 19, 1999, and September 4, 1999, with the vast majority signed during the last ten days of June.

Defendants suggest that plaintiffs' use of the singular to describe their employer prevents them from now claiming to have multiple employers. However, when deciding a motion to dismiss, a court is to give a liberal construction to a complaint. In this instance the discrepancy between the signed consents and the complaint's allegations is not fatal. Plaintiffs allege that they were "employees of both the State of Wisconsin and each of the Defendants." Compl. ¶ 1. In the consent forms, plaintiffs authorized their attorneys to file complaints and conduct the litigation. Plaintiffs' allegations that defendants' responsibilities included hiring and firing provide sufficient support for plaintiffs' claim that defendants should be considered their employers in addition to the Department of Corrections. Whether the Fair Labor Standards Act applies to such "employers" is a separate question.

### B. Defendants' Status as Employers

 Status as an employer under the Fair Labor Standards Act is a question of law. See Karr v. Strong Detective Agency, Inc., 787 F.2d 1205, 1206 (7th Cir.1986). The Supreme Court has held that even individuals who do not pay employees' wages qualify as employers under the act where the individuals have "substantial control of the terms and conditions of the work of [the] employees." Falk v. Brennan, 414 U.S. 190, 195, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973) (holding that partners in real estate management company were employers under Fair Labor Standards Act). In Falk, the partnership performed "virtually all management functions that are ordinarily required for the proper functioning of an apartment complex," including hiring and supervising all employees required for the operation and maintenance of the buildings and grounds. See id. at 192, 94 S.Ct. 427. The employees were paid out of rents received before the surplus after expenses went to the owners. See id. at 193, 94 S.Ct. 427. In contracts between the partnership and the owners, the employees were considered employees of the owners. See id.

In holding that individuals may be liable as employers, the Court followed the plain language of the statute. See Falk, 414 U.S. at 195, 94 S.Ct. 427 (holding that "expansiveness" of act's definition of employer and extent of management company's managerial responsibilities brought company within statutory definition of employer). Defendants concede that lower-level employers in private businesses may be "employers" under the Fair Labor Standards Act, but they contend that no similar interpretation would apply to state employees. Under the original version of the act, defendants would be correct. When first enacted, the Fair Labor Standards Act defined "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee but shall not include the United States or any State or political subdivision of a State." See Bowe v. Judson C. Burns, Inc., 46 F.Supp. 745, 748 (E.D.Pa. 1942) (quoting 29 U.S.C. § 203). In 1966, Congress expanded the definition of employer by narrowing the exclusion for state employers and including within the act's definition of employer a state or a political subdivision thereof with respect to employees in any hospital or related institution, schools or employed in the operation of a local transit system. See 29 U.S.C. § 203 historical and statutory notes. In 1974, Congress removed the exclusion for states and enacted the current definition: " 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency . . ." 29 U.S.C. § 203(d).

In amending the Fair Labor Standards Act to cover state employees, Congress indicated that it believed it had authority to abrogate the state's immunity. Had it intended that the act would not cover state

employees who act as "employers," it could have made an explicit exception for public employees from inclusion in the term "any person." Its failure to do so is one indication that it intended to treat both state employees and private employees as employers if they acted in that role. The legislative history defendants cite includes no discussion of this point. *See* S.Rep. No. 89-1487 and Conf.Rep. No. 89-2004, *reprinted in* 1966 U.S.C.C.A.N. 3002-3052; H.R.Rep. 93-913 and H.R.Conf.Rep. No. 93-953, *reprinted in* 1974 U.S.C.C.A.N. 2811-2868; S.Rep. 99-159 and H.R.Conf. Rep. No. 99-357, *reprinted in* 1985 U.S.C.C.A.N. 651-671. The omission could mean, as defendants argue, that Congress understood the act would not apply to individual employees, but only to "public agencies," but an equally valid interpretation is that it was so obvious that the act applied to individuals that it was unnecessary to mention it. The fairest reading of the legislative history indicates that Congress simply did not consider the issue.

When Congress amended the act to remove the exemption for states, it was concerned with allowing state employees to pursue claims under the Fair Labor Standards Act. Congress amended the Fair Labor Standards Act in 1974 in response to the Supreme Court's holding in *Employees of Dep't of Public Health and Welfare v. Depart. of Public Health and Welfare, Missouri*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), that the 1966 amendments to the act did not reflect sufficient legislative intent to abrogate states' sovereign immunity and allow individuals to sue their state employers in federal court. *See* H.Rep. 93-913, reprinted in 1974 U.S.C.C.A.N. 2811, 2853. The *Employees of Dep't of Public Health* opinion does not suggest that state employees' *only* recourse for violations of the Fair Labor Standards Act is recovery obtained by the Secretary of Labor; it simply lists the Secretary of Labor's authority to bring suit as evidence that "[b]y holding that Congress did not lift the sovereign immunity of the States under the [Fair Labor Standards Act], we do not make the exten-sion of coverage to state employees meaningless." *Id.* at 285, 93 S.Ct. 1614.

Neither plaintiffs nor defendants cite anything that is directly on point on the question whether state employees may be employers, although defendants make an effort to do so by citing numerous opinion letters issued by the agency that administers the Fair Labor Standards Act, the Wage and Hour Division of the Department of Labor. These letters refer to public sector· employees as employees of a public agency or as being employed by a public agency. The letters do not indicate that only a public agency may be a public employees' employer under the act. Contrary to defendants' suggestion, another opinion letter by the Department of Labor cited by defendants, 1994 WL 1004859, does not indicate that public sector employees may sue only "public agencies." Instead, it addresses whether state employees who may occasionally work additional hours on a voluntary basis for other state agencies outside their usual working hours are considered to be working for independent or joint employers. As in all the cases cited by defendants, in writing the opinion letters, the Department of Labor had no occasion to discuss the proposition that is at issue in this case.

Plaintiffs cite Judge Posner's opinion in *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir.1987), as evidence that they may sue defendants, even though defendants do not pay their salaries: "The word 'employer' is defined broadly enough in the Fair Labor Standards Act (of which the Equal Pay Act is an amendment) to permit naming another employee rather than the employer as defendant, provided the defendant had supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation." In *Riordan*, a former state employee had sued two supervisors, also state employees, under the Equal Pay Act. The·court of appeals held that the district court abused its discretion in excluding evidence relevant to plaintiff's sex discrimination claim.

Judge Posner's comments suggest that the defendant state employee could be considered an employer under the Fair Labor Standards Act, although the opinion did not hold so explicitly. It was not necessary to reach the question because the plaintiff insisted that his Equal Pay Act claim was against the defendant only in his official capacity and therefore against the state agency itself.

Defendants assert that the omission of individuals from the act's definition of "public agency" indicates that individual state employees may not be sued as employers under the act, even when the individuals have responsibilities that might subject them to liability as employers in the private sector. However, 29 U.S.C. § 203(d) defines "employer" explicitly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency...." The definition of "employer" excludes "any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." *Id.* The lack of a similar exclusion for those acting in the capacity of officer or agent of a public agency indicates that individual state employees may fall within the act's definition of employer. I agree with plaintiffs that the plain language of the statute contemplates that individuals may be sued as employers by state employees.

Defendants argue that little weight should be given to the statutory phrase included in the definition of employer, "any person acting directly or indirectly in the interest of an employer in relation to an employee," because it was included in the statute at a time when state employees were excluded explicitly from coverage under the act. However, where "statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *See United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)). In this instance, the legislative history cited by defendants does not suggest that Congress ever considered the specific issue of the liability of individuals such as defendants under the act. 29 U.S.C. § 216(b) provides that plaintiffs' action "may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction."

The Supreme Court has determined that Congress lacked the authority to allow suits against public agencies, *see Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) and *Alden,* 119 S.Ct. at 2240, but those holdings may not affect defendants' potential liability, if Congress did intend that such individuals would be liable as employers under the act.

Defendants' status as employers of plaintiffs under Wisconsin state law is not determinative of the question whether defendants are employers under the Fair Labor Standards Act. The federal statute provides its own definition section, *see* 29 U.S.C. § 203, and does not rely on state law in determining who is an "employer." Rather, it defines employer expansively to include "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency." 29 U.S.C. § 203(d). Also, defendants' status as employers under the Fair Labor Standards Act is a separate question from their status under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, because these acts employ a different definition of employer. Therefore, cases holding that individual state employees have no liability under Title VII or the ADA are not relevant to the same question under the Fair Labor Standards Act.

Although plaintiffs allege in their complaint that defendants acted as agents of the state in their official capacities to control and direct the terms of plaintiffs' em-

ployment and do not make a similar allegation about defendants in their individual capacities, this omission does not affect the determination that defendants qualify as employers under the act. In both their individual and official capacities, defendants controlled and directed the terms and conditions of plaintiffs' employment, including hiring, firing, disciplining, timekeeping, recordkeeping, job duties and their execution, pay, overtime and work hours. I conclude therefore that defendants are "employers" within the meaning of the Fair Labor Standards Act. Whether they are immune from suit under the Eleventh Amendment is the question I turn to next.

### III. SOVEREIGN IMMUNITY ISSUES

#### A. *Introduction*

■ With two exceptions, the Eleventh Amendment prohibits suits against the state by citizens of another state or by the state's own citizens for monetary damages or equitable relief. *See College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 119 S.Ct. 2219, 2223, 144 L.Ed.2d 605 (1999); *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). First, a state may make an *explicit* waiver of the protections of the amendment and consent to suit in federal court. *See Clark v. Barnard*, 108 U.S. 436, 447–448, 2 S.Ct. 878, 27 L.Ed. 780 (1883); *see also College Savings Bank*, 119 S.Ct. at 2228 (repudiating doctrine of constructive waiver). Second, Congress may use its enforcement powers under the Fourteenth Amendment to abrogate the state's Eleventh Amendment immunity through an unequivocal expression of its intent to do so and pursuant to a valid exercise of power. *See Seminole Tribe of Florida*, 517 U.S. at 55, 116 S.Ct. 1114; *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

#### 1. *Wisconsin's consent to suit*

■ Plaintiffs argue that when Wisconsin enacted Wis.Stat. § 893.82, the state consented to be sued under the Fair Labor Standards Act. The purposes of § 893.82 are to: "(a) Provide the attorney general with adequate time to investigate claims which might result in judgments to be paid by the state. (b) Provide the attorney general with an opportunity to effect a compromise without a civil action or civil proceeding. (c) Place a limit on the amounts recoverable in civil actions or civil proceedings against any state officer, employe or agent." Wis.Stat. § 893.82(1). These purposes provide notice of claims and limit damages; they do not demonstrate an intent to consent to suits against the state. The statute provides no affirmative waiver of the state's immunity but instead forecloses suits when its procedures are not followed. (Section 893.82 is the current version of § 895.45, renumbered for more logical placement in the chapter. *See* Wis. Stat. § 893.82, judicial council committee's note—1979.) The Supreme Court of Wisconsin has determined that § 895.45 did not "provide the 'express legislative permission [consent]' necessary for the state to be sued." *Fiala v. Voight*, 93 Wis.2d 337, 346–47, 286 N.W.2d 824, 830 (1980) (quoting *Kegonsa Joint Sanit. Dist. v. City of Stoughton*, 87 Wis.2d 131, 274 N.W.2d 598 (1979)). Therefore I conclude that Wisconsin has not waived its Eleventh Amendment immunity to suit under the Fair Labor Standards Act.

In *Seminole Tribe of Florida*, 517 U.S. 44, 116 S.Ct. 1114, the Supreme Court "made it clear that Congress lacks power under Article I to abrogate the States' sovereign immunity from suits commenced or prosecuted in the federal courts." *Alden*, 119 S.Ct. at 2246. Because Wisconsin has not waived its Eleventh Amendment immunity, plaintiffs may not sue Wisconsin, or its Department of Corrections, directly in federal court under the Fair Labor Standards Act. *See Mueller v.*

*Thompson,* 133 F.3d 1063, 1066 (7th Cir. 1998).

## 2. *Ex parte Young Exception*

*Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), established an additional exception to sovereign immunity that allows a court to order prospective injunctive relief to restrain state officials sued in their official capacities from violating the Constitution even when the state itself is immune from suit under the Eleventh Amendment. Although *Young* itself concerned an alleged constitutional violation, the rule extends to violations of federal statutory law. *See Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 281, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) ("An allegation of an on-going violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction."); *see also Marie O. v. Edgar,* 131 F.3d 610, 614 (7th Cir.1997) (stating that "suits against state officials seeking prospective equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment under the *Ex parte Young* doctrine"). However, the *Young* exception does not apply to this case because, as discussed above, injunctive relief is not available to plaintiffs.

■ Plaintiffs try to circumvent the sovereign immunity bar by naming state officers as defendants but their effort fails to the extent they name defendants in their official capacities, rather than only in their individual capacities. The Supreme Court has discussed the distinction between individual and official capacity suits against state officials in the § 1983 context:

> We emphasize that official-capacity suits " 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " [*Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ] (quoting *Monell v. Dept. of Social Services of New York City,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Suits against state officials in their official capacity therefore should be treated as suits against the State.... Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law." ...
>
> Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law.

*Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). "[W]hile an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damage judgment in an official-capacity suit must look to the government entity itself." *Graham,* 473 U.S. at 166, 105 S.Ct. 3099. *See also Alden,* 119 S.Ct. at 2267–68 ("a suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally").

In *Hafer,* the Court clarified 'official capacity,' saying that it refers "to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Hafer,* 502 U.S. at 26, 112 S.Ct. 358. The Court's statement is relevant to the discussion whether defendants are "employers" under the Fair Labor Standards Act. Although defendants are employers of plaintiffs only because of their official positions and job responsibilities, the question of official and individual capacity refers to the remedies sought and not to the capacity in which defendants acted. By suing defendants in their individual capacities, plaintiffs assert a claim for back wages against defendants personally and not against the state treasury.

Defendants cite cases from other circuits not binding on this court for the idea that defendants in their individual capacity had no control over plaintiffs' employment and

therefore do not qualify as employers under the Fair Labor Standards Act. *See Wascura v. Carver,* 169 F.3d 683, 685–87 (11th Cir.1999) (following *Welch, infra,* as law of the circuit); *Welch v. Laney,* 57 F.3d 1004, 1010–11 (11th Cir.1995); *Huckabay v. Moore,* 142 F.3d 233 (5th Cir.1998) (discussing employers under Title VII). With respect, I do not find the Eleventh Circuit's reasoning persuasive. In *Welch,* the court upheld the district court's dismissal of the plaintiff's Equal Pay Act claim against the defendant sheriff in his individual capacity "because Sheriff Laney in his individual capacity had no control over Welch's employment and does not qualify as Welch's employer under the Act." *Welch,* 57 F.3d at 1011. The court does not attempt to explain why it believed that the sheriff had no control over Welch's employment in his individual capacity or why it believed the individual-official capacity distinction was determinative. In my view, the individual-official capacity analysis is not useful when determining whether defendants are "employers" for purposes of the Fair Labor Standards Act.

In *Wascura,* a former city employee sued city officials in their individual and official capacities under the Family and Medical Leave Act. *See Wascura,* 169 F.3d at 684. The court determined that the Family and Medical Leave Act's definition of employer was materially identical with that in the Fair Labor Standards Act and was more expansive than the definitions of employer used in Title VII, the Age Discrimination in Employment Act and the ADA. *See id.* at 685–86. The court found itself "bound by the *Welch* decision regardless of whether we agree with it." *Id.* at 687.

In *Huckabay,* cited by defendants, the Court of Appeals for the Fifth Circuit addressed a county employee's claims that the county commissioner had instituted generally racist employment practices in an attempt to force out white employees in violation of Title VII and 42 U.S.C. §§ 1981 and 1983. *See Huckabay,* 142 F.3d 233. Although Huckabay sued the commissioner in both his official and individual capacities, the court determined that the commissioner qualified as an employer only in his official capacity. *See id.* at 241. The court stated that the power wielded by the commissioner that qualified him as an employer

> is necessarily exercised, however, by a person who acts as an agent of the corporate or municipal body he represents. Because the wrongful acts were performed in his official capacity, any recovery against that person must be against him in that capacity, not individually. Further, if Moore acted only in his *individual* capacity, he did not act as an "employer" and would not be liable under title VII to the extent that he acted individually.

*Id.* at 241 (internal citations omitted; emphasis in original). It is not meaningful to talk about people *acting* in official or individual capacities. A person acts; the official-individual capacity distinction is a fiction erected by courts to determine what remedies are available where the action is unlawful. Therefore, I respectfully disagree with the analysis of the Fifth Circuit in *Huckabay.* (*Huckabay* is also distinguishable from the present case because it involved Title VII's definition of employer, which is significantly different from that in the Fair Labor Standards Act.)

The Supreme Court has labeled a "fiction" the *Ex Parte Young* exception to Eleventh Amendment immunity that strips officials' actions of their official character and subjects state officials to liability for their individual conduct where the officers act unconstitutionally in the performance of their job duties. *See Coeur d'Alene Tribe of Idaho,* 521 U.S. at 270, 117 S.Ct. 2028; *Pennhurst State School & Hospital,* 465 U.S. at 114 n. 25, 104 S.Ct. 900. The theory behind the *Ex Parte Young* exception is that the state cannot authorize an unconstitutional action and that the state official is therefore acting ultra vires. *See Pennhurst,* 465 U.S. at 102, 114 n. 25, 104 S.Ct. 900. The responsibilities that qualify

defendants as employers are not affected by whether they comply with federal law in carrying out those duties. Defendants do not stop acting as employers when they require plaintiffs to work without compensation before or after their shifts or when they alter plaintiffs' timesheets. Therefore, it is irrelevant whether defendants' actions were illegal in determining whether they are considered employers under the Fair Labor Standards Act. Defendants hold positions in which they qualify as employers under the act's definition of the term. Defendants may have acted ultra vires at times, but they acted as employers.

Determining whether a particular individual is an employer is a threshold question that precedes the determination of individual and official capacity. Resolving the second question turns on the type of relief sought and whether defendants were acting ultra vires in requiring plaintiffs to work without pay before and after their shifts. Although some courts have merged the two questions, their reasoning is not persuasive. In *Welch*, discussed above, the Court of Appeals for the Eleventh Circuit failed to explain why it should apply two different analyses in deciding whether public employees and private employees are employers for purposes of the Fair Labor Standards Act. Defendants do not dispute that in the private sector, the act applies to individuals with duties similar to defendants, including responsibilities for pay and overtime, but they do not offer a persuasive reason why the act should not apply to state employees in the same way. It is meaningless to talk about the distinction between individual and official capacity claims because that determination does not even become relevant until after the determination of defendants' status as employers. I am persuaded that defendants qualify as employers under the act in both their individual and official capacities.

### B. *Official Capacity Claims*

■ State officials may be sued in their official capacities for injunctive relief but may not be sued for money damages. *See*

*MSA Realty Corp. v. State of Illinois*, 990 F.2d 288, 291 (7th Cir.1993) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). Because the Fair Labor Standards Act allows only the Secretary of Labor to sue for injunctive relief, plaintiffs' claims against defendants in their official capacities must fail.

■ With the exception of *Ex Parte Young*-type claims for injunctive relief, official capacity claims against state officials are barred by the state's immunity. "A suit against an official in his official rather than individual capacity is a suit against the state." *Stoner v. Wisconsin Dep't of Agriculture, Trade and Consumer Protection*, 50 F.3d 481, 483 (7th Cir.1995) (quoting *Duckworth v. Franzen*, 780 F.2d 645, 649 (7th Cir.1985)). The Eleventh Amendment protects the state treasury. Because any recovery of money damages against defendants in their official capacities would come directly from the state treasury, plaintiffs' claims against defendants in their official capacities must be dismissed for lack of federal jurisdiction. *See Pennhurst*, 465 U.S. at 98, 104 S.Ct. 900 (principle of sovereign immunity is constitutional limitation of federal judicial power established in Art. III).

### C. *Individual Capacity Claims*

Plaintiffs have not alleged that defendants were following state policy when they allegedly violated the Fair Labor Standards Act. Therefore, state policies or procedures are not at stake in this litigation. *Cf. Coeur d'Alene Tribe of Idaho*, 521 U.S. at 269, 287, 117 S.Ct. 2028 (holding *Ex Parte Young* exception inapplicable to suit against state officials in their individual capacities when relief requested would affect state's sovereign interest in its lands and waters in manner as intrusive as award of funds from state treasury). If plaintiffs are successful in this suit, they will be awarded back wages from defen-

dants' personal assets and there will be no effect upon the state treasury or other state interests. (This is true even if the state chooses to indemnify employees for damage awards arising out of their state employment. *See Stoner*, 50 F.3d at 482–83 (state that chooses to indemnify its employees for damages does not threaten its Eleventh Amendment immunity).) For this reason, the case is distinguishable from cases involving state property. *See id.; see also Ysleta Del Sur Pueblo v. Laney*, 199 F.3d 281 (5th Cir.2000) (holding that state was the true party in interest for purposes of Eleventh Amendment immunity even though tribe sued state officials in their official capacities where tribe wanted to eject state officials from piece of real property). Although this case would have been brought against the state were it not for the Eleventh Amendment, that fact does not bar plaintiffs from pursuing claims against individual defendants who allegedly violated federal law willfully.

Plaintiffs have alleged that defendants altered plaintiffs' timesheets knowingly and willfully and otherwise required plaintiffs to perform essential job duties without compensation. Plaintiffs allege that defendants have knowingly and willfully allowed plaintiffs to work without compensation. This alleged violation of the Fair Labor Standards Act strips defendants of their official capacity immunity and subjects them to individual liability. Plaintiffs will be allowed to proceed with their claim against defendants in their individual capacities.

## IV. MOTION TO STAY DISCOVERY

Defendants suggest that they will raise a qualified immunity defense to the individual capacity claims that have survived this motion to dismiss. If defendants choose to file a motion raising that defense, I will consider granting a short stay of discovery.

### ORDER

IT IS ORDERED that

1. The motion of defendants Jeffrey P. Endicott, Kim E. Kannenberg, Frances M. Paul and Bruce J. Schneider to dismiss plaintiffs' claims for non-monetary relief are GRANTED because plaintiffs have failed to state a claim upon which relief may be granted;

2. Defendants' motion to dismiss the claims against them in their official capacities is GRANTED for lack of federal jurisdiction;

3. Defendants' motion to dismiss the claims against them in their individual capacities is DENIED; and

4. A ruling on defendants' motion to stay discovery will be reserved until defendants file either a motion to dismiss or a motion for summary judgment on their defense of qualified immunity.