**Nicki J. KEENE, Plaintiff,**

v.

**Nicholas RINALDI, Individually, and in his official capacity as Manager, Postal Distribution Center, U.S. Postal Service, Michael E. Ellis, Individually and in his official capacity as Senior Labor Relations Specialist, U.S. Postal Service, William J. Henderson, Postmaster General, Allegheny/MidAtlantic area, Defendants.**

**No. 1:99CV00154.**

United States District Court, M.D. North Carolina.

Oct. 27, 2000.

Nickie J. Keene, High Point, NC, Pro se.

Lynne P. Klauer, Office of U.S. Attorney, Greensboro, NC, for Nicholas Rinaldi, Michael E. Ellis, Postmaster General, William J. Henderson, Alleghany/Mid–Atlantic area, defendants.

## *ORDER*

BULLOCK, District Judge.

On September 18, 2000, the Recommendation of the United States Magistrate Judge was filed and notice was served on the parties pursuant to 28 U.S.C. § 636. Thereafter, the Court received plaintiff's objections to the Recommendation.

The Court has appropriately reviewed plaintiff's objections *de novo* and finds they do not change the substance of the United States Magistrate Judge's rulings which are affirmed and adopted.

**IT IS THEREFORE ORDERED** that defendants' motion to strike plaintiff's demand for punitive and emotional distress damages relating to the Family and Medical Leave Act claim (docket no. 17) is granted, that plaintiff's motion to change punitive damages to any judgment awarded by the Court (docket no. 18) is denied, that defendants' motion to dismiss relating to the Family and Medical Leave Act claim (docket no. 25) is granted as to plaintiff's individual capacity claims, and denied as to plaintiff's official capacity claims with the condition that the FMLA official capacity claims against the individual defendants be dismissed upon motion by the U.S. Postal Service to be substituted as defendant for said individuals with respect to the FMLA claims, and finally, that plaintiff's motion for a ruling in his favor due to defendants' default (docket no. 32) is denied.

## *RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE*

ELIASON, United States Magistrate Judge

This case comes before the Court on (1) defendants' motion to strike plaintiff's de-

mand for punitive damages, (2) plaintiff's motion to change punitive damages to any judgment awarded by the Court, (3) defendants' motion to dismiss for lack of subject matter jurisdiction, and (4) plaintiff's motion for a ruling in his favor due to defendants' default.

### Facts

Only a brief recitation of the facts is necessary. Plaintiff, acting *pro se,* filed this action alleging that the United States Postal Service, acting through its supervisory staff, violated his rights in a number of ways. He names as defendants, three individuals, two of whom he sues in both their official and individual capacities, and the third (Henderson), who is sued only in his official capacity. Plaintiff claims that they violated the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.,* by refusing to allow him to take time off due to his serious health conditions, including sleep apnea, high blood pressure, stress anxiety, tinnitus, and chronic dislocation of his right shoulder. He also claims that they retaliated against him for his attempts to take that time, another alleged FMLA violation. Plaintiff next contends that the Postal Service violated his rights in various ways under the Privacy Act, Inspector General's Act, Civil Rights Act of 1991, and Americans with Disabilities Act. Plaintiff requests both punitive and compensatory damages as a result of these alleged violations.

Overall, plaintiff's complaint can be described as rambling and confusing. It is not clear which specific allegations are claimed to violate which law, and no dates are given for most of the alleged violations. However, at this stage of the proceedings, the complaint must be read broadly, given plaintiff's *pro se* status.

### Defendants' Motion to Strike

The first motion before the Court is defendants' motion to strike plaintiff's demand for punitive damages under the FMLA. The damages available under the

FMLA are set out in that act. *See* 29 U.S.C. § 2617(a). That statutory provision states that an employer who commits a FMLA violation shall be liable for lost pay, lost benefits, other actual monetary losses suffered by the aggrieved employee, and equitable relief such as employment, reinstatement, or promotion. It also contains liquidated damages provisions for cases where a violation occurred in bad faith. For the liquidated damages provision, an employer, which has been found to have committed a violation, can only avoid liquidated damages by proving it acted in good faith. *Id.*

■ The Court concludes that the FMLA does not allow punitive damages for two reasons. First, the explicit language of the FMLA does not mention punitive damages. Second, the presence of the liquidated damages subsection suggests that the drafters of the Act included that subsection in lieu of allowing punitive damages. Most of the other courts addressing the issue have concluded that punitive damages are not available under the FMLA. *Hite v. Biomet, Inc.,* 53 F.Supp.2d 1013, 1024 (N.D.Ind.1999); *Settle v. S.W. Rodgers, Co., Inc.,* 998 F.Supp. 657, 666 (E.D.Va.1998), *aff'd* 182 F.3d 909 (4th Cir.1999)(Table). Courts have looked to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* in interpreting the FMLA because it appears that Congress substantially patterned the FMLA on the FLSA. *Wascura v. Carver,* 169 F.3d 683, 685–86 (11th Cir.1999), *Buser v. Southern Food Service, Inc.,* 73 F.Supp.2d 556, 561–62 (M.D.N.C.1999). Under the FLSA, courts have also held that liquidated damages are available, but not punitive damages. *Bolick v. Brevard County Sheriff's Dept.,* 937 F.Supp. 1560 (M.D.Fla.1996); *Waldermeyer v. ITT Consumer Financial Corp.,* 782 F.Supp. 86 (E.D.Mo.1991), *Tombrello v. USX Corp.,* 763 F.Supp. 541 (N.D.Ala.1991). For these reasons, it is concluded that punitive damages are not available under the FMLA. Therefore, defendants' motion to strike plaintiff's re-

quest for punitive damages should be granted.[1]

### Plaintiff's Motion to Change Punitive Damages

In response to defendants' motion to strike punitive damages, plaintiff filed a motion denominated, "MOTION TO CHANGE PUNITIVE DAMAGES TO ANY JUDGMENT AWARDED BY THE COURT." Plaintiff does not explain his request. To the extent that the motion responds to defendants' motion to strike plaintiff's punitive damages demand, that issue has been fully dealt with above and the motion should be denied for the reasons previously stated.

### Defendants' Motion to Dismiss

The third matter before the Court is defendants' motion to dismiss plaintiff's FMLA claims for lack of subject matter jurisdiction. According to defendants, the FMLA claims are not proper because the FMLA does not allow individuals working for public agencies to be named as defendants. Instead, defendants contend that the United States Postal Service is the only possible proper party in this case. Consequently, they argue that the claims against them should be dismissed, and the Postal Service should be substituted as the sole defendant.

A motion under Fed.R.Civ.P. 12(b)(1) challenges a court's subject matter jurisdiction. In deciding such a motion, the burden will be on the plaintiff to show that subject matter jurisdiction is present. *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). Also, a court may consider evidence outside the pleadings without converting the motion into one for summary judgment. *Id.*

Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*Clark v. Tarrant County, Texas,* 798 F.2d 736 (5th Cir.), *reh'g denied,* 802 F.2d 455 (5th Cir.1986).

The standards applicable to Rule 12(b)(1) motions have been summarized by the Eleventh Circuit in *Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.,* 104 F.3d 1256, 1260–61 (11th Cir.1997):

We begin by observing that it is extremely difficult to dismiss a claim for lack of subject matter jurisdiction. *Simanonok v. Simanonok,* 787 F.2d 1517, 1519 (11th Cir.1986). Attacks on subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) come in two forms: "facial attacks" and "factual attacks." *Lawrence v. Dunbar,* 919 F.2d 1525, 1528–29 (11th Cir.1990). Facial attacks on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990) (quoting *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.1980),

---

1. Defendants also ask that plaintiff's request for damages for emotional distress under the FMLA be stricken. Defendants are unsure that plaintiff is even seeking such damages and, in his response, plaintiff does not clarify the matter. However, to the extent that plaintiff may be seeking damages for emotional distress, the same reasoning applies to this demand as applied to his demand for punitive damages and defendants' motion should be granted. *See Rogers v. AC Humko Corp.,* 56 F.Supp.2d 972, 979 (W.D.Tenn.1999)(collecting cases); *Hite v. Biomet, Inc.,* 53 F.Supp.2d 1013, 1024 (N.D.Ind.1999); *Settle v. S.W. Rodgers, Co. Inc.,* 998 F.Supp. 657 (E.D.Va. 1998). This is consistent with decisions regarding the FLSA, *Lloyd v. Wyoming Valley Health Care System, Inc.,* 994 F.Supp. 288 (M.D.Pa.1998), except to the extent that some courts have held that the FLSA may now allow common law remedies in retaliation cases. *Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219, 1226 (7th Cir.1995); *but see Snapp v. Unlimited Concepts, Inc.,* 208 F.3d 928 (11th Cir.2000) (no punitive damages even in retaliation cases).

*cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980)) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)). " 'Factual attacks', on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.' " *Id.*

. . . On a factual attack of subject matter jurisdiction, a court's power to make findings of facts and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of plaintiff's cause of action. *Lawrence,* 919 F.2d at 1529. If the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action, then:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Lawrence,* 919 F.2d at 1529 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). Because defendants' attack on plaintiff's claims is a facial attack, the Court will not consider evidence outside the pleadings in reaching its decision.

Before deciding this motion, it is important to note that plaintiff has sued all three defendants in their official capacities and two of them (Rinaldi and Ellis) in their individual capacities. This distinction is critical because official capacity and individual capacity claims must be evaluated differently.

■ Turning first to the official capacity claims, defendants' motion to dismiss may be granted on certain conditions. A suit against a public employee in his or her official capacity is a suit against the government entity. *Prickett v. DeKalb County,* 1998 WL 928308 (N.D.Ga. Dec.1, 1998) (No. 1:97–CV–3395–TWT) (FMLA), *citing Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). This means that any judgment against the individuals in their official capacity would be satisfied by the governmental entity. *Id.* Consequently, plaintiff will not be prejudiced by dismissal of the individuals named in their official capacity and, in addition, the dismissal of unnecessary parties will promote judicial efficiency and reduce the chance of confusion. *Id.* Therefore, even if dismissal of the individuals in their official capacity is not required, it is desirable and the motion should be granted on the condition that the Postal Service file a motion to be substituted as the defendant in regard to the official capacity FMLA claims.

The individual capacity claims against Rinaldi and Ellis present a different problem. These defendants want the claims against them dismissed outright and with prejudice. They contend that the FMLA does not authorize suits against public employees in their individual capacity.

The starting point for this inquiry begins with the statute and the definition of who can be an employer under the Act. The FMLA defines "employer" in the following manner:

(4) Employer

(A) In general

The term "employer"—

(i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;

(ii) includes-

(I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and

(II) any successor in interest of an employer;

(iii) includes any "public agency", as defined in section 203(x) of this title; and

(iv) includes the General Accounting Office and the Library of Congress.

29 U.S.C. § 2611.

It is clear that the Postal Service could be and is covered by the language in Section (4)(A)(iii) as a "public agency." However, this section does not mention individual employees. Indeed, the only possible basis for any personal liability under the FMLA must arise from subsection (4)(A)(i) or (ii) of the Act's definition of "employer." Subsection (4)(A)(i) covers individuals as well as entities, but only if they employ fifty (50) or more persons. It does not cover the individuals in this case because it is the Postal Service which employs both them and plaintiff. This leaves subsection (4)(A)(ii) which imputes liability to persons acting on behalf of an employer or which are a successor to the employer. Yet, as will be seen, this language was not intended to impose individual liability on public agency supervisors. This conclusion is apparent both from the structure of the statute and the purpose of the clause, which is to nullify any legal loopholes that might otherwise leave an employee without any real remedy.

■ In interpreting a statute, the Court's first duty is to look to the words of the statute themselves and attribute to them their plain meaning, except in rare cases where the result would be absurd or demonstrably at odds with the intention of the legislation as enacted. *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 452–465 & n. 9, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242–43, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). In such rare instances, or where the words provide an ambiguous meaning, the court may then seek assistance from legislative history and to some extent, Executive Regulations. *Id.*

■ In this case, the plain words of the statute do not suggest that supervisors of a public agency may be considered to be an employee's employer. Subsection (4)(A)(i) includes persons employing more than 50 private industry employees. Subsection (4)(A)(ii) then can be seen as expanding the common law definition of a private employer to prevent circumvention by technicalities. Public employers are included in subsections (4)(A)(iii) and (iv) entirely apart from subsections (4)(A)(i) and (ii), which cover private employers.[2]

2. As will be discussed later, some courts have attempted to interpret the FMLA by simply looking to cases which have interpreted the FLSA, and then applying the result to the FMLA. This is unfortunate because even if the intent of Congress concerning public employee supervisors is unclear with respect to the FLSA, Congress clarified the situation in the FMLA by clearly separating them out.

The FLSA, in its definition section, unfortunately commingles or associates public agency employers with private employers. This appears to have been for mere drafting convenience at the time public agencies were added to and engrafted into the FLSA. *See Luder v. Endicott,* 86 F.Supp.2d 854, 859–60 (W.D.Wis.2000). (In 1974, Congress did not consider the effect of including public agency in 29 U.S.C. § 203(d)'s definition which covers private employers.) This statute then read:

§ 203. Definitions

As used in this chapter—
(a) "Person" means an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons.

. . . . .

(d) "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or any-

The above noted order in which the FMLA was written suggests that subsection (4)(A)(ii) was not intended to modify the latter subsections (4)(A)(iii) and (iv). Had Congress so intended, it surely would have made this intent crystal clear by placing subsection (4)(A)(ii) last in the statute. The fact that it did not do so very strongly suggests that Congress intended subsection (4)(A)(ii) to create individual liability for persons acting on behalf of private employers described in subsection (4)(A)(i), but not for persons acting on behalf of public employers defined by subsections (4)(A)(iii) and (iv).

In addition to the order of the subsections of the statute, there is one other structural or textual feature which suggests that individual liability does not apply to persons working for public agencies. Subsection (4)(A)(ii) is itself actually composed of two parallel subparts labeled (I) and (II). Both can be applied to private persons or organizations, but only one of them would apply to public agencies. While subpart (I), which covers persons acting in the interest of their employer, could include public employees, the same is not true of subpart (II). Subpart (II) states that the successors in interest to an employer are included as employers. Public agencies do not ordinarily have successors in interest in labor situations. Consequently, subpart (II) appears to apply only to private employers as described in subsection (4)(A)(i) of the statute and not the public agencies mentioned in subsections (4)(A)(iii) and (iv). Given its parallel placement in the structure of the statute with

subpart (II), it follows that subpart (I) also only applies to private employers.

In addition to the logical structure of the FMLA's definition of employer, the Court also takes note of regulations developed by the department of labor. Thus, 29 C.F.R. § 825.104 discusses which employers are covered by the FMLA and states that "individuals such as *corporate officers*" may be individually liable. 29 C.F.R. § 825.104(d)(emphasis added). It is significant that the regulation specifically mentions corporate officers, but does not mention mere supervisors. In fact, it does not mention any individuals working for public agencies. Further, the regulation which discusses public agency liability under the FMLA discusses the agency's liability and does not mention individuals. 29 C.F.R. § 825.108. This lack of regulatory discussion of liability for supervisors working for public agencies confirms the Court's conclusion that the FMLA does not impose individual liability upon such persons. In the end, the structure and text of 29 U.S.C. § 2611(4), along with the regulations developed under it, convince the Court that the statute was not intended to make public officials liable in their individual capacities.

Moreover, an interpretation of the FMLA which would permit a mere supervising employee to be deemed an employer creates an, if not absurd, then an ironic situation where every person in an organization can be an employer of others except the person on the very bottom. By intermingling with and confusing the line between employer and employee, such an

one acting in the capacity of officer or agent of such labor organization.

. . . . .

(x) "Public Agency" means the Government of the United States; the government of a State or political subdivision thereof; any agency of the United States (including the United States Postal Service and Postal Rate Commission), a State, or a political subdivision of a State; or any interstate governmental agency. 29 U.S.C. § 203.

In 1974, Congress merely engrafted "Public Agency" into the FLSA by adding to an exist-

ing definition for private employers. This did create an ambiguous situation concerning the liability of public agency employees. But, in the FMLA, Congress explicitly took "Public Agency" out of the private employer definition and disconnected it from liability based on a person acting directly or indirectly in the interest of an employer. Therefore, a better way to view the situation is that the FMLA corrected the ambiguity of the FLSA, as opposed to letting the ambiguity of the FLSA control the interpretation of the FMLA.

interpretation mainly serves to laden FMLA cases with personal disputes and antagonisms and matters of office politics. This result is both unnecessary and contra indicative of the purpose of the FMLA. The goal of the FMLA through subsection (4)(A)(ii) is to make sure that there will be payment for any determined liability.

The first thing to note about subsection (4)(A)(ii) is that it appears to be an attempt by Congress to prevent a circumvention of the law, whether by conscious intent or by accident. Thus, subsection (4)(A)(ii) includes individuals or entities who should be considered to be an employer even though they may not have been the actual employer. This is most clear in subsection (4)(A)(ii)(II) which speaks to the successor situation where the original employer has perhaps become defunct for some reason. This subsection prevents circumvention of the FMLA by making a successor entity accountable as if it were the employer. It prevents an employer from selling its business to avoid liability.

Subsection (4)(A)(ii)(I), on the other hand, which is derived from Section 203(d) of the FLSA, (*see* n. 2, *supra*), is less straightforward because it covers the more complicated situation where it may not be entirely clear who is acting as an employer or whether the legal relationships have become so complicated that there might be either an intentional or accidental circumvention of responsibility under the FMLA. Such a situation was present in *Falk v. Brennan,* 414 U.S. 190, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973), a FLSA case where apartment complexes hired a real estate management company to perform all management services, from collecting rent to performing maintenance supervision. The contract provided that maintenance workers were employees of the project owners, however, the work was done under the supervision of the real estate company and

workers were paid from rental monies received at the apartment complexes. Both the owners and the management service were held to be employers. Another example, here the focus being entirely within an organization, is the interpretation in *Donovan v. Agnew,* 712 F.2d 1509 (1st Cir.1983), another FLSA case. That court found that corporate officers of a then bankrupt corporation who make operational decisions could be held liable. It specifically rejected an overly broad and strictly literal interpretation of section 203(d) that would make any supervisory employee liable for FLSA wages. *Id.* at 1513. It noted instead that the language made better sense when interpreted as "preventing employers from shielding themselves from responsibility for the acts of their agents." *Id.* And this also includes an "economic reality" test that looks to economic facts so that individuals cannot manipulate the corporate entity. *Id.*

Under plaintiff's interpretation of the FMLA, a person could sue his immediate supervisor alone, perhaps for personal, vindictive reasons, while the actual employer is left untouched. Such an interpretation turns the "economic reality" test on its head.

There is no reason to think that Congress would have intended subsection (4)(A)(ii)(I) to have included all of an employee's supervisors as potential employers. Rather, the intention of the language appears to simply be to ensure that someone will be responsible for paying for or rectifying a FMLA violation. Anything more only promotes redundancy, unnecessary complication, and the involvement of unnecessary persons who may be in a position not far removed from the employee who is bringing the lawsuit.[3]

Only one circuit court has decided the issue of public employee supervisor liability under the FMLA. In *Wascura v. Car-*

---

**3.** It is acknowledged that this interpretation of the FMLA differs from how some courts have lately construed it and the FLSA for both private and public supervisors. *See* Michael L. Ripple, Comment, *Supervisors Beware: The*

*Family and Medical Leave Act May Be Hazardous to Your Health,* 16 J. Contemp. Health L. & Pol'y 273 (1999). The Fourth Circuit has not ruled on the issue. In *Brock v. Hamad,* 867 F.2d 804, 808 n. 6 (4th Cir.1989) (FLSA

*ver*, 169 F.3d 683, the Eleventh Circuit noted that perhaps private individuals could sometimes be held personally liable for FMLA violations, but public officials could not be so held in their individual capacity. It reasoned that public officials make employment decisions only in their official capacity and have no power over employment matters.[4]

The district courts are in some disarray, although at this time it appears that a majority have found individual liability for public employee supervisors under the FMLA. *Kilvitis v. County of Luzerne*, 52 F.Supp.2d 403, 412–413 (M.D.Pa.1999)(collecting cases); *Meara v. Bennett*, 27 F.Supp.2d 288, 291 (D.Mass.1998)(collecting cases). The main reasoning used by those courts finding liability appears to be based on the belief that the FLSA imposes liability on public employee supervisors and, therefore, the FMLA should be similarly interpreted. However, as discussed above, (*see* n. 2, *supra*), that premise relating to interpretation of the FLSA is suspect[5] and, in addition, a reading of the FMLA, by itself, supports a contrary interpretation.

In conclusion, a construction of the FMLA which does not include public agency supervisors as employers is more in line with the purpose of the statute. First, the statutory language in the FMLA is materially different from the FLSA and would appear to express an intention that public agencies and the two Congressional bodies are to be treated differently than private employers. In addition, a construction which eliminates a public employer's supervisors from being named as defendants in a FMLA lawsuit appears to be more consonant with the general purpose of section 204(d) of the FLSA, from which the language in the FMLA was derived, and which purpose is to avoid circumvention of liability. Finally, this interpretation avoids a certain perversity in the establishment of a public policy which would turn the economic reality test on its head by focusing on the small fry of an organization. The lack of necessity for such a policy and the additional confusion and

case), the Fourth Circuit indicated in *dicta* that an individual owner of a company, had he been in a corporate situation, may have been responsible. However, the case cited for support was the First Circuit's decision in *Donovan v. Agnew*, 712 F.2d 1509 (1983), which is discussed above and provides support for the conclusion that neither the FLSA nor the FMLA were intended to impose liability on mere supervisory employees as opposed to owners, officers, etc.

**4.** The rationale of the court in *Wascura v. Carver*, 169 F.3d 683 (11th Cir.1999), may not be entirely persuasive. It specifically stated that its decision was compelled by a previous decision by a panel in *Welch v. Laney*, 57 F.3d 1004 (11th Cir.1995), a claim brought against a county sheriff under the Equal Pay Act. In *Welch*, the court simply stated that the sheriff had no control over the dispatcher's employment in his individual capacity. The lack of analysis in both *Welch* and *Wascura* greatly reduces their persuasive value.

**5.** A leading case examining the issue of public agency supervisor liability in depth is *Luder v. Endicott*, 86 F.Supp.2d 854 (W.D.Wis.2000). Even the *Luder* case, which would impose liability on public employee supervisors,

agrees the issue is not an easy question to resolve. That court found that the legislative history does not provide any guidance. In the end, it appears to have been persuaded by the argument that if Congress meant to exclude public employee supervisors from liability, it would have done so in the FLSA, section 203(d), just like it excluded both labor organizations and their officers and agents. *Id.* at 861.

That view suffers several defects. First, one could as readily argue that if Congress meant to include public agency supervisors as employers in the FLSA when it added public agencies, it would have explicitly done so. Second, in dealing with labor organizations, Congress was specifically excluding a non-public, non-corporate organization and, therefore, needed to also exclude the officers to complete the exemption. Third, an interpretation including public agency supervisors as employers defies economic reality and adds nothing to Congress' intent to prevent circumvention of the FLSA. It only adds needless confusion. Therefore, the Court rejects the reasoning of those courts which would justify including public agency supervisors as employers under the FMLA based on a similar, questionable, interpretation of the FLSA.

inefficiency which such policy engenders is enough to dissuade one from adopting such a course. For these reasons, the Court rejects the decision in the line of cases represented by *Kilvitis v. County of Luzerne, supra.* Instead, it is recommended that the Court follow the decision of the Eleventh Circuit in *Wascura v. Carver, supra,* but for the reasons expressed here.

### Plaintiff's Motion for a Ruling Due to Default

The final motion before the Court is plaintiff's motion for a default ruling against defendants Rinaldi and Ellis due to an alleged failure to answer his claims against them as individuals. However, this claim is factually incorrect because defendants did file an answer to all of plaintiff's claims in this case. (Docket no. 16) Second, and more importantly, as discussed above, plaintiff's individual claims against Rinaldi and Ellis should be dismissed for a lack of subject matter jurisdiction. Plaintiff's motion is both factually baseless and moot, and should be denied as such.

**IT IS THEREFORE RECOMMENDED** that defendants' motion to strike plaintiff's demand for punitive and emotional distress damages (docket no. 17) be granted, that plaintiff's motion to change punitive damages to any judgment awarded by the Court (docket no. 18) be denied, that defendants' motion to dismiss (docket no. 25) be granted as to plaintiff's individual capacity claims, and denied as to plaintiff's official capacity claims with the condition that the FMLA official capacity claims against the individual defendants be dismissed upon motion by the U.S. Postal Service to be substituted as defendant for said individuals with respect to the FMLA claims, and that plaintiff's motion for a ruling in his favor due to defendants' default (docket no. 32) be denied.

September 18, 2000.