Richard C. BOULTON, Appellant,

v.

INSTITUTE OF INTERNATIONAL EDUCATION, Appellee.

No. 01–CV–951.

District of Columbia Court of Appeals.

Argued June 27, 2002.

Decided Oct. 10, 2002.

---

**2.** *See, e.g., In re Stow,* 633 A.2d 782 (D.C. 1993).

Andrea S. Grill for appellant.

Carol Connor Flowe, with whom Ernest A. Tuckett III, Washington, DC, and Susan A. Meisel, New York, NY, were on the brief, for appellee.

Before SCHWELB, FARRELL, and GLICKMAN, Associate Judges.

GLICKMAN, Associate J.

Richard C. Boulton appeals from the entry of summary judgment in favor of his former employer, Institute of International Education ("IIE"), on his complaint alleging discrimination in violation of the District of Columbia Human Rights Act[1] and breach of contract. Boulton challenges the conclusions of the motions judge that he failed to make a prima facie showing of sexual orientation discrimination with regard to his termination, his other claims of sexual orientation discrimination were time-barred, and the IIE employee handbook did not afford him contractual rights.[2] We affirm.

Our review of the grant of summary judgment is *de novo*. *See Am. Cont'l Ins. Co. v. Pooya*, 666 A.2d 1193, 1197 (D.C.1995). "A motion for summary judgment should be granted whenever it is shown 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Musa v. Cont'l Ins. Co.*, 644 A.2d 999, 1001–02 (D.C.1994) (quoting Super.

1. D.C.Code § 1–2512 *et seq.* (1981), recodified at D.C.Code § 2–1402.11 *et seq.* (2001).

2. Although Boulton alleged that IIE discriminated against him because of his gender as well as his sexual orientation, he does not challenge the motion judge's rulings rejecting his gender-based claims.

Ct. Civ. R. 56(c)). To defeat the motion, " 'the opposing party need only show that there is sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial' " taking into account applicable burdens of proof. *Moseley v. Second New St. Paul Baptist Church*, 534 A.2d 346, 347 (D.C.1987) (quoting *Nader v. de Toledano*, 408 A.2d 31, 42 (D.C.1979)). The non-moving party cannot satisfy its burden by propounding "[m]ere conclusory allegations." *Musa*, 644 A.2d at 1002.

■ *1. Discriminatory Termination.* To establish a *prima facie* case of discriminatory termination, Boulton had to demonstrate, *inter alia*, that "a substantial factor in his termination was his membership in the protected class." *Hollins v. Fed. Nat'l Mortgage Ass'n*, 760 A.2d 563, 572 (D.C. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). To make that demonstration in the absence of direct evidence of discriminatory animus,[3] Boulton needed to show "(1) [that he] was replaced by a person outside of [his] protected class, or, if the position has remained vacant, that the employer has continued to solicit applications for the position; or (2) that other similarly situated employees … particularly those employees not of the terminated employee's [protected class] were not terminated but were instead treated more favorably." *Blackman v. Visiting Nurses Ass'n*, 694 A.2d 865, 871 (D.C.1997).

■ Boulton did not present admissible evidence that IIE replaced him or continued to solicit applications for his position.

The only proof Boulton offered on this score was the sworn statement of his former co-worker, Rick Clowney, that another IIE employee named Christine Morfit had asked Clowney if he had seen a job listing in The Washington Post for Boulton's old position. Boulton did not produce an affidavit or testimony from Morfit herself or a copy of the advertisement to which she allegedly referred.[4] As Morfit's reported statement was inadmissible hearsay, the motions judge correctly ruled that Clowney's affidavit did not furnish evidence that IIE was seeking to fill Boulton's position and therefore that the affidavit could not defeat summary judgment. *See* Super. Ct. Civ. R. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.").

■ Boulton likewise failed to show that similarly situated employees who were not in his protected class were not terminated. Boulton identified one comparable employee, a fellow manager ·in his division of IIE, whose job was not eliminated. This was insufficient to show preferential treatment of similarly situated employees, however, for Boulton presented no evidence that the employee he identified was not a member of his protected class. If IIE had replaced Boulton, it would not matter whether his successor was a member of his protected class or not. *See Stella v. Mineta*, 284 F.3d 135, 146 (D.C.Cir.2002) (holding "that a plaintiff in a discrimination case need not demonstrate that she was replaced by a person

---

3. Boulton did not proffer direct evidence of discrimination in his termination, such as admissions or hostile statements. IIE's witnesses testified that Boulton's position was

eliminated in a departmental reorganization triggered by budgetary pressures.

4. IIE denies that it ever placed such an advertisement.

outside her protected class in order to carry her burden of establishing a prima facie case"). But the inference of discrimination that arises when an employer terminates and replaces an otherwise qualified employee in a protected class is not drawn so readily when the employee is not replaced, because the employee's qualifications are not the issue if the job itself is being eliminated. Since IIE did not replace Boulton, its retention of similarly situated employees is not circumstantial evidence of disparate treatment unless those employees were not in Boulton's protected class. *See McManus v. MCI Communications Corp.*, 748 A.2d 949, 954 n. 5 (D.C.2000) ("In making a *prima facie* case of employment discrimination in the absence of an allegation that someone had replaced her in the same job, appellant would be required to show that the jobs of one or more persons who were not members of the protected class, and who had jobs similar to hers, had not been terminated."); *O'Donnell v. Associated Gen. Contractors of Am., Inc.*, 645 A.2d 1084, 1088 (D.C.1994) (same).[5] Thus, Boulton

did not make a *prima facie* case that his sexual orientation played a substantial role in his termination, and the motions judge properly entered summary judgment for IIE on that claim.

 2. *Time–Barred Claims of Sexual Orientation Discrimination.* "The limitation period for a civil action brought pursuant to the District of Columbia Human Rights Act is one year." *Jones v. Howard Univ.*, 574 A.2d 1343, 1345 & 1345 n. 1 (D.C.1990) (citing *Davis v. Potomac Elec. Power Co.*, 449 A.2d 278, 280–81 (D.C.1982) and former D.C.Code § 1–2544(a)); *see also* D.C.Code § 2–1403.16(a) (2001).[6] Boulton filed his complaint against IIE in March of 2000. Other than his termination, however, the acts of sexual orientation discrimination of which he complained occurred prior to April 1997, outside the one-year limitations period.[7]

 Like the motions judge, we are not persuaded by Boulton's contention that he presented evidence of continuing violations which extended into the one year period before he filed suit.[8] "A continuing

---

5. Boulton points out that he was the only employee whose position was eliminated (though IIE subsequently did eliminate other positions), and that his duties were not eliminated but instead were redistributed among the remaining employees. Addressing such a situation, the Seventh Circuit has held that "[t]he plaintiff in a single-discharge case does not need to make a showing that 'similarly situated' employees were treated better because the inference of discrimination arises from the fact that [the plaintiff was] constructively 'replaced' by workers outside the protected class." *Bellaver v. Quanex Corp./Nichols–Homeshield*, 200 F.3d 485, 495 (7th Cir.2000). Boulton presented no evidence, however, that the employees who assumed his duties were not in his protected class.

6. The limitations period runs from the occurrence of the unlawful discriminatory act or the discovery thereof. *Jones, supra;* D.C.Code § 2–1403.16(a). No issue of delayed discovery is presented in this case.

7. It is undisputed that, as the motions judge found, "[a]ll of [Boulton]'s sexual orientation discrimination claims, with the exception of his termination, occurred while [Boulton] was under the supervision of Mr. Robert Gordon. Mr. Gordon's supervision of [Boulton] ended with [Boulton]'s transfer to [another division of IIE] in 1997." The allegedly discriminatory acts which Boulton attributed to Gordon's hostility toward gays included assignment to an undesirable office, denial of support and credit for his work, unfair evaluation of his performance, removal from a project implementation team that traveled to Cairo, indifference when Boulton's relationship with his immediate supervisor deteriorated, and, ultimately, transfer out of Gordon's division in April 1997 in lieu of being fired.

8. Boulton did not assert a hostile work environment claim against IIE. *Cf. Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106, (2002) (holding that under Title VII of the Civil Rights Act of

violation exists where there is a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the statutory period." *Doe v. District of Columbia Comm'n on Human Rights*, 624 A.2d 440, 444 n. 5 (D.C.1993) (citing *Milton v. Weinberger*, 207 U.S.App. D.C. 145, 150, 645 F.2d 1070, 1075 (1981)). Such "discrimination may not be limited to isolated incidents, but must pervade a series or pattern of events which continue into the filing period." *Doe*, 624 A.2d at 444 n. 5. A plaintiff attempting to establish a continuing violation must demonstrate " 'a continuous and repetitious wrong ... with damages flowing from the act as a whole rather than from each individual act.' " *Beard v. Edmondson & Gallagher*, 790 A.2d 541, 547–48 (D.C.2002) (quoting *DeKine v. District of Columbia*, 422 A.2d 981, 988 n. 16 (D.C.1980)).

Boulton did not present evidence that he was subjected to continuing sexual orientation discrimination after April 1997, when he was transferred within the organization and his job circumstances changed. See note 7, *supra*. Except for his termination, Boulton charged that after 1997 he was discriminated against on the basis of his gender rather than his sexual orientation; furthermore, he attributed this post-transfer gender discrimination to separate actions on the part of different actors. Boul-

ton claimed that because his post-transfer supervisor was aware of his "tainted" status when he joined her division, she must have formed "preconceived notions" about him which led to his continuing discriminatory treatment. But " '[t]he determinative question is whether ... [the employee with discriminatory] animus was a cause of the [alleged discrimination by another employee].' " *Blackman*, 694 A.2d at 871 (quoting *Wilson v. Stroh Cos.*, 952 F.2d 942, 946 (6th Cir.1992)), and as the motions judge stated, there was no evidence of a "causal link" other than "speculation." That speculation was not enough to forestall summary judgment for IIE on Boulton's claims of sexual orientation discrimination continuing into the filing period. *See Musa*, 644 A.2d at 1002 (holding that mere speculation does not satisfy the non-moving party's burden of establishing a dispute of material fact sufficient to defeat a motion for summary judgment).

3. *Breach of Contract.* Boulton claimed that IIE's employee handbook created an implied contract which IIE breached when it terminated him without first trying to find him another position in the organization.[9] The motions judge granted summary judgment to IIE on this claim because the employee handbook included "precise" language disclaiming any intent to create contractual rights or obligations and specifically preserving the "at-will" nature of the employment relationship.[10]

---

1964, a charge alleging a hostile work environment will not be time barred if all acts constituting the claim are part of the same unlawful practice and at least one act falls within the filing period). In contrast to a hostile work environment, the Supreme Court said, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.*, —— U.S. at ——, 122 S.Ct. at 2072.

**9.** Boulton relies on a provision of the handbook that reads as follows:

Every effort is made to ensure your job security, however, it sometimes becomes necessary to eliminate jobs. If your job is affected, every effort will be made to locate another suitable position for you in IIE. To the extent that it is feasible, on-the-job training in another area of work will be provided for up to a maximum of 30 days.

**10.** The motions judge relied on the following handbook provisions:

Boulton argues that this language was "rationally at odds" with the handbook provision on which he relies, raising a jury question as to whether IIE intended to be bound by the policy it set forth. *Strass v. Kaiser Found. Health Plan* 744 A.2d 1000, 1013 (D.C.2000). We disagree.

As this court stated in *Strass*, "[t]he terms of an employer's personnel or policy manual may be sufficient to raise a jury question as to whether the manual creates contractual rights for the employee." *Id.* at 1011. "However, employers can effectively disclaim any implied contractual obligation arising from such provisions." *Id.* " 'The legal effect of such a disclaimer is, in the first instance, a question for the court to decide.' " *Id.* (quoting *Smith v. Union Labor Life Ins. Co.*, 620 A.2d 265, 269 (D.C.1993)). A mere statement that the employee handbook is not a contract does not necessarily settle the matter. *See Strass*, 744 A.2d at 1012–14. Rather, for provisions relating to employee termination to be "unenforceable at law," our cases have held that the employee handbook "must contain language clearly reserving the employer's right to terminate at will." *Sisco v. GSA Nat'l Capital Fed. Credit Union*, 689 A.2d 52, 55 (D.C. 1997); *See, e.g., Smith*, 620 A.2d at 269 (holding that employee handbook did not give rise to implied contract where it stated that it was not a contract and that employment was terminable at will); *see also Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 627 n. 3 (D.C.1997) (finding no implied contract where handbook specifically preserved an at-will em-

ployment relationship); *United States, ex rel. Yesudian v. Howard Univ.*, 332 U.S.App. D.C. 56, 72, 153 F.3d 731, 747 (1998) ("In each of the District of Columbia cases in which a disclaimer of contract status has been held to negate the inference of a binding obligation from an employee handbook, the disclaimer has stated *both* that the manual is not a contract *and* that employees may be terminated at will.") (emphasis in the original, citations omitted); *accord Goos v. Nat'l Ass'n of Realtors*, 715 F.Supp. 2, 4 (D.D.C.1989).

IIE's employee handbook stated both that it was "not to be considered as creating terms and conditions of an employment contract," and that the employment relationship was "employment-at-will." *See* note 10, *supra*. Under our case law this language was sufficiently explicit to preclude the creation of implied contractual obligations as a matter of law. *Smith*, 620 A.2d at 269. The motions judge therefore properly granted summary judgment to IIE on Boulton's breach of contract claim.

For the foregoing reasons, we affirm the order entering summary judgment in favor of IIE.

*So ordered.*

The employment relationship that exists between IIE and each of its employees is employment-at-will. Under this relationship, any employee is free to end his or her employment for any reason with or without prior notice. Likewise, IIE may, at its discretion, decide to end an individual's employment.

This handbook and other Human Resource manuals are intended to supply you with a basic guide to IIE's policies and procedures which, it should be noted, is not to be considered as *creating terms and conditions of an employment contract* or as a promise of future employment.