Elliotte Patrick COLEMAN, Plaintiff,

v.

POTOMAC ELECTRIC POWER COMPANY, Defendant.

No. CIV.A.03–247 RMC.

United States District Court, District of Columbia.

Sept. 9, 2003.

Elliotte Patrick Coleman, Washington, DC, for Plaintiff.

Dean Andrew Romhilt, Hogan & Hartson LLP, Washington, DC, for Defendant.

## MEMORANDUM OPINION

COLLYER, District Judge.

Elliotte Patrick Coleman sues his employer, the Potomac Electric Power Company (Pepco), for allegedly discharging him in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"). Pepco has filed a motion to dismiss or, alternatively, for summary judgment because Mr. Coleman has already been fully reinstated and has received all back wages and benefits due to him pursuant to an arbitration award under the collective bargaining agreement that covers Mr. Coleman's employment. Pepco argues that Mr. Coleman suffers from no "actual monetary losses" occasioned by its alleged violation of FMLA and therefore cannot maintain this suit.

The Court agrees and will dismiss the suit.

### Background Facts

Most of the underlying facts are not in dispute. Mr. Coleman has worked for Pepco since 1997 as a customer service representative in one of Pepco's call centers. Throughout that time, his employment has been governed by a collective bargaining agreement that provides for progressive discipline and contains a grievance/arbitration process. On February 1, 2001, Pepco took disciplinary action by placing Mr. Coleman on Decision Making Leave (DML) (a suspension from work), which is the last level of discipline prior to termination. The discipline was not related to Mr. Coleman's attendance. A grievance was filed to protest the DML.

Due to a health condition, Mr. Coleman missed work from November 27, 2001 through December 3, 2001. On November 27 and November 30, he called in after his reporting time to report his absences. Upon his return, Pepco approved his request for FMLA leave for that period.

Nonetheless, on December 10, 2001, Pepco issued a Formal Coaching Notice under the attendance category for being absent from work on two occasions within a six-month period of time. Formal Coaching is not discipline, *per se,* but is in the nature of a warning that performance must improve to avoid discipline. On January 7, 2002, Mr. Coleman was suspended and given Notice of a Continuation of Employment Meeting, which is a procedure by which Pepco advises an employee that it intends to terminate employment and the employee has the opportunity to respond. The termination was based on alleged violations of call-in procedures on November 27 and 30 as well as repeatedly leaving his telephone in the wrong "mode" so that he was inaccessible to customers.

On January 9, 2002, Mr. Coleman's doctor advised him to refrain from work-related activities for fourteen (14) days. Pepco approved FMLA leave for the period from January 9, 2002 to January 23, 2002. The Continuation of Employment Meeting scheduled for January 10 was rescheduled at Mr. Coleman's request but only to January 11. The meeting was held in his absence and he was terminated on January 14, 2002.

The grievance over the February 2001 DML went to arbitration in March 2002. The arbitrator granted the grievance in part—he found that the DML was too severe a sanction for the misconduct and reduced the discipline to a Written Reminder. By the terms of the progressive discipline provisions, the Written Reminder then expired as stale. As a result of this award, Mr. Coleman should have had no active discipline on file at the time of his January 2002 termination and therefore he should have received a lesser discipline than termination. Accordingly, Pepco reinstated Mr. Coleman's employment and he returned to work on April 1, 2002.

In addition, Pepco paid him back pay, less the amount of unemployment compensation he had received, payment for 54 hours of overtime that he might have worked, payment for healthcare costs that he had incurred while discharged, and continued seniority without any break. The discharge was converted to a DML. That DML was ultimately rescinded. As of the briefing of this matter, Mr. Coleman had no active discipline in his file.

On or about January 21, 2002, Mr. Coleman retained counsel to represent him in his FMLA claim against Pepco. He filed a complaint with the U.S. Department of Labor, Wage and Hour Division ("DOL") on January 22, 2002. He tells the Court that DOL took the position that, on these facts, disciplining Mr. Coleman for violating the call-in procedures on November 27 and 30, 2001 violated FMLA. He states that DOL completed its investigation on June 6, 2002, and formally advised Pepco that it had violated FMLA. Presumably, this is why the DML concerning the late call-ins on November 27 and 30—issued to Mr. Coleman in lieu of discharge upon his return to work—was ultimately rescinded.

Although Mr. Coleman is now proceeding *pro se*, he states that he accrued attorney's fees in excess of $5,000 before his reinstatement in April 2002. He filed this suit to recover those attorney's fees and to recover an additional week of back pay, additional overtime compensation, and an adjustment of the taxes withheld from his back pay. He alleges that he was terminated and out of work from January 14 through March 29, 2002—eleven (11) weeks—but only received ten (10) weeks of back pay. He argues that his union has filed a grievance on behalf of the employees because Pepco has mismanaged the overtime list. Until that is resolved, he asserts, it is not possible for Pepco to calculate properly how much overtime he is due for the period of his discharge. Lastly, he argues that the tax rate used by Pepco to calculate his tax withholdings on the back pay was too high and that his back pay check should have been more.

## Standard of Review

Pepco has filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. Both Pepco and Mr. Coleman have attached documents to their pleadings, which the Court has considered in ruling on the motion. The Court therefore treats the motion as one for summary judgment. *See* FED. R. CIV. P. 12(b).[1]

Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not a "disfavored legal shortcut[;]" rather, it is a reasoned and careful way to resolve cases fairly and expeditiously. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994). Any factual dispute must be capable of affecting the substantive outcome of the case to be

---

1. Mr. Coleman filed an Opposition to Pepco's motion on April 7, 2003. Earlier that day, the Court had issued a *Fox Neal* Order, directing Mr. Coleman to respond to Pepco's motion, and informing him of the Court's consideration of affidavits in support of a motion for summary judgment. Mr. Coleman filed a supplemental Opposition on April 22, 2003, which the Court accepts.

"material" and "genuine." *See Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505; *Laningham v. United States Navy,* 813 F.2d 1236, 1242–43 (D.C.Cir.1987).

## Analysis

■ Pepco argues correctly that FMLA provides more limited remedies than some other employment statutes. If a violation of the law is proven, an employee may receive:

Any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or

In a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care [to a family member when leave is denied], up to a sum equal to 12 weeks of wages or salary for the employee.

29 U.S.C. § 2617(a)(1)(A)(i). To the extent that Mr. Coleman can show "actual monetary losses," he may be entitled to interest and to liquidated damages in an equal amount. *See id.* at § 2617(a)(1)(A)(ii) & (iii). Injunctive relief may be available as appropriate. *See id.* at § 2617(a)(1)(B). "[I]n addition to any judgment awarded to the plaintiff, [the court shall] allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." *Id.* at § 2617(a)(3). Recovery under FMLA is "unambiguously limited to actual monetary losses." *Walker v. United Parcel Service, Inc.,* 240 F.3d 1268, 1277 (10th Cir.2001). Other kinds of damages—punitive damages, nominal damages, or damages for emotional distress—are not recoverable. *See id.* at 1277–78 (nominal damages); *Settle v. S.W. Rodgers Co., Inc.,* 998 F.Supp. 657, 665–66 (E.D.Va.1998), *aff'd.* 182 F.3d 909, 1999 WL 486643 (4th Cir.1999) (punitive damages and damages for emotional distress); *Keene v. Rinaldi,* 127 F.Supp.2d 770, 772–73 & n. 1 (M.D.N.C.2000), *aff'd, adopted* 127 F.Supp.2d 770 (M.D.N.C.2000) (same).

Mr. Coleman has alleged "actual monetary damages," *i.e.,* a missing week of back pay, insufficient overtime, erroneous tax withholdings, and attorney's fees. Pepco has responded on each point.

■ Turning first to the question of whether Pepco owes Mr. Coleman an additional week of back pay, the Court finds that Pepco has proven that it does not. Mr. Coleman claims that he is entitled to eleven weeks of back pay for the period of time from January 14, 2002 through March 29, 2002. When Pepco reinstated Mr. Coleman, it paid him ten weeks of wages for the period of time between January 21, 2002 and March 29, 2002. Pepco explains, and proves through affidavit and documentary evidence, that even though Mr. Coleman was terminated on January 14, 2002, Pepco paid him for the entire week of January 14 through January 18, 2002 as if he had worked a regular, full-time workweek of 38.75 hours. *See* Defendant's Reply, Declaration of Daniel Worsham at ¶ 5 and Exh. B. Therefore, when he was reinstated, he was not entitled to back pay for the January 14 through January 18 workweek. Mr. Coleman returned to work on April 1, 2002, and was fully compensated for the April 1 through April 5 workweek. *See id.,* Declaration of Daniel Worham at ¶ 6 and Exh. C. Pepco correctly paid Mr. Coleman ten weeks of back pay for the period between January 21 and March 29.

■ Payment for overtime is sufficient. Mr. Coleman's back pay amount included payment for 54 hours of overtime that Pepco anticipated he would have worked absent his termination, amounting to an

average of 5.4 hours of overtime per week. Pepco based its calculation on Mr. Coleman's seniority and the availability of overtime in his department during his termination period. *See* Motion to Dismiss or, in the Alternative, for Summary Judgment, Declaration of Pamela R. Myrick at ¶ 5 ("Motion to Dismiss"). Pepco reinforces the reasonableness of this approaching by providing affidavit evidence that during 2001, 2002, and the first quarter of 2003, Mr. Coleman worked an average of 5, 4.4, and 1.7 hours of overtime per week, respectively. Defendant's Reply, Declaration of Daniel Worsham at ¶¶ 10–14.

▆ Mr. Coleman's real complaint does not argue with Pepco's approach but with alleged mismanagement of overtime lists, a matter over which the Union has filed a grievance. That is where that issue should be resolved, by an arbitrator pursuant to the terms of the grievance/arbitration provisions of the contract. Should the Union obtain a favorable arbitration award, overtime for the period will be re-calculated and Mr. Coleman may or may not receive additional back pay for overtime work. But that is pursuant to the collective bargaining dispute resolution process and this Court will not assume the arbitrator's role. Mr. Coleman's own argument shows that his alleged overtime loss was not "by reason of the [FMLA] violation," 29 U.S.C. § 2617(a)(1)(A)(i), but by other alleged wrongdoing on the part of Pepco, and therefore does not establish a compensable FMLA loss.

Tax withholdings are what they are because of Pepco's normal approach when paying back pay. To the extent that more monies were withheld than might have been, Mr. Coleman will receive them at the end of the year. Inasmuch as the payment was made pursuant to an arbitrator's award over discipline unrelated to attendance or FMLA, and was consistent with past practice, the Court cannot find that it caused a "loss" under FMLA.

▆ Mr. Coleman also claims that he is entitled to interest, liquidated damages, and attorney's fees. The statutory language provides that he would be entitled to liquidated damages and interest based on the amount that he is due under 29 U.S.C. § 2617(a)(1)(A)(i). *See* 29 U.S.C. § 2617(a)(1)(A)(ii), (iii). However, Pepco has fully compensated Mr. Coleman for any lost wages under 29 U.S.C. § 2617(a)(1)(A)(i)(I), *see supra,* and actual monetary losses under 29 U.S.C. § 2617(a)(1)(A)(i)(II), *see* Motion to Dismiss at 3 n. 2 (Pepco reimbursed Mr. Coleman for medical expenses incurred during termination period).[2] He is therefore not entitled to any statutory damages under these subsections, and the Court has no judgment on which to base an award of interest or liquidated damages. Likewise, Mr. Coleman is entitled to attorney's fees "in addition to any judgment awarded to [him]." Because he is not entitled to "any judgment," he cannot receive an award of attorney's fees.[3] In short, statutory damages are a prerequisite to interest, liquidated damages, and attorney's fees. Because Mr. Coleman has not established

---

**2.** Mr. Coleman has not asserted any other "actual monetary losses" in his Complaint or in his Oppositions.

**3.** Mr. Coleman retained his attorneys to secure relief from Pepco's alleged FMLA violations. This case presents unique circumstances—the attorneys apparently played no role in the arbitration conducted pursuant to

the collective bargaining agreement that led to the recision of the initial DML, Mr. Coleman's reinstatement, and his award of back pay. The normal operations of the collective bargaining process, rather than FMLA, led to Mr. Coleman's reinstatement and reimbursements.

damages under 29 U.S.C. § 2617(a)(1)(A)(i), he may not receive these additional remedies.[4]

## Conclusion

As a result of the grievance and arbitration processes under the collective bargaining agreement, Pepco has fully compensated Mr. Coleman for any losses he suffered due to alleged violations of FMLA, and Pepco's Motion for Summary Judgment is therefore GRANTED. A separate Order accompanies this Memorandum Opinion.

---

**4.** While Mr. Coleman claims "Defendant remains in violation of the FMLA," Opposition at 8, he has failed to allege any compensable losses. Pepco has reinstated Mr. Coleman, paid him back pay and other damages, re-moved disciplinary documentation from his file, and approved his requests for FMLA leave. Mr. Coleman has not presented any support for his assertion that there is something more Pepco must to do.