Elliotte Patrick **COLEMAN**, Plaintiff,

v.

**POTOMAC ELECTRIC POWER COMPANY**, Defendant.

No. CIV.A. 03–1202(RMC).

United States District Court, District of Columbia.

March 17, 2004.

Elliotte Patrick Coleman, Washington, DC, Pro se.

Dean Andrew Romhilt, Hogan & Hartson LLP, Washington, DC, for Defendant.

## MEMORANDUM OPINION

COLLYER, District Judge.

Elliotte Patrick Coleman complains that the Potomac Electric Power Company ("Pepco)" violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* and the D.C. Human Rights Act, D.C. CODE ANN. § 2–1401.01 *et seq.* ("DCHRA"), by continuously retaliating against him for exercising rights afforded him by law. Pepco has filed a motion to dismiss, arguing that Mr. Coleman's complaint was filed too late and is barred by the applicable statutes of limitations. After briefing on the motion to dismiss was completed, Mr. Coleman filed a motion for a preliminary injunction alleging additional retaliatory actions.

This Court previously reviewed and dismissed Mr. Coleman's complaint that his discharge violated the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"). *Coleman v. Potomac Electric Power Co.,* 281 F.Supp.2d 250 (D.D.C. 2003) (*"Coleman I "*). The instant complaint (*Coleman II* ) alleges that the same discharge was part of retaliatory acts by Pepco in response to Mr. Coleman's protected activities involving equal employment opportunity ("EEO"). After careful consideration of the parties' arguments and the entire record, the Court concludes that the complaint in *Coleman II* should be dismissed. However, because Mr. Coleman is proceeding *pro se,* the Court

must grant him leeway when construing his complaint and other papers. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The Court will therefore treat his recent pleading as a motion to amend the complaint (*Coleman III* ). *See* FED. R. CIV. P. 15(a). The Court will grant him leave to amend.

## BACKGROUND FACTS

Mr. Coleman has worked for Pepco as a customer service representative for many years. He is a member of Local Union 1900 of the International Brotherhood of Electrical Workers ("IBEW") and is covered by a collective bargaining agreement. He has had concerns about possible discrimination in his workplace since 1999.

A detailed history of Mr. Coleman's actions is necessary to understand the disposition of his current complaint.[1] In 1999, Mr. Coleman met with an internal representative of Pepco's EEO program on October 1 and, on November 4, he filed an internal EEO complaint concerning his failure to receive promotions for which he had applied. On April 18, 2000, he met with B.J. Williams, General Manager of Human Resources ("HR"), to discuss his complaint. Ms. Williams allegedly "promised that she would resolve the internal complaint by seeing that Plaintiff secured a position commensurate with his education and experience within six (6) months." Compl. ¶ 30. Mr. Coleman "accepted" this resolution, although he stated he would file a charge with the Equal Employment Opportunity Commission ("EEOC") despite it. *Id.* When, on May 3, 2000, he did file a formal charge alleging discrimination, Ms. Williams "refused to honor the agreement that she made with [Mr. Coleman] on April 18, 2000." *Id.* ¶ 38. In addition, Mr. Coleman relates that he visited a hospital on June 14, 2000, where "[t]he Physician determined that Plaintiff suffered from work related stress, anxiety and depression." Opp. at 4.

The EEOC dismissed Mr. Coleman's May 2000 EEO charge on September 29, 2000. The EEOC also issued a "right to sue" letter, which is a prerequisite to instituting a lawsuit. Mr. Coleman "did not exercise his right to sue." Compl. ¶ 42.

On February 5, 2001, Mr. Coleman was placed on "Decision Making Leave" ("DML"), which is the last level of discipline prior to termination. Pursuant to the parties' progressive discipline system under the collective bargaining agreement, the DML was to remain in Mr. Coleman's file for 18 months. The IBEW filed a grievance challenging the DML ("Grievance"). Opp. at 4–5.

On January 14, 2002, Mr. Coleman was terminated for attendance infractions. He asserts here and in his prior suit that this termination resulted from wilful violations of the FMLA. *See* Opp. at 5 ("To effectuate the termination Defendant willfully committed numerous violations of the Family and Medical Leave Act of 1993 . . . ."). He filed a complaint with the Department of Labor concerning his discharge on January 22, 2002, and filed suit

---

1. The facts of Mr. Coleman's employment and related activities are not in dispute. They are taken from Defendant's Motion to Dismiss ("Motion"), Plaintiff's Motion to Deny Defendant's Motion to Dismiss ("Opp."), Defendant's Reply to Plaintiff's Opposition to Its Motion to Dismiss ("Reply"), Supplement to Plaintiff's Opposition to Defendant's Motion to Dismiss ("Supp.I"), Defendant's Response to Plaintiff's Supplement to His Opposition to Defendant's Motion to Dismiss ("Supp.Response"), and Plaintiff's Second Supplement to His Opposition to Defendant's Motion to Dismiss ("Supp.II"). While plaintiff is officially proceeding *pro se,* his pleadings have the definite sign of a lawyer's hand. Counsel will be ordered to identify themselves in any future pleadings.

in this court on February 13, 2003. *See Coleman I,* 281 F.Supp.2d at 253.

Meanwhile, the Grievance made its way through the grievance process under the collective bargaining agreement and was presented to Arbitrator Ira F. Jaffe on March 13, 2002. In a decision issued on March 18, 2002, Arbitrator Jaffe determined that a DML was an " 'unreasonably severe penalty' " for the alleged infraction. Opp. at 5. Because the February 2001 DML was not sustained, Mr. Coleman's discharge—which had rested in part on the pre-existing DML—was also reversed. *Coleman I,* 281 F.Supp.2d at 252–53. The Arbitrator ordered Pepco to reinstate Mr. Coleman and pay him back pay and all related damages. Supp. I, Exh. G. This was done. Mr. Coleman returned to work on April 1, 2002. As of that date, his discharge was downgraded to a DML. Mr. Coleman asserts that Pepco was again "willfully violating the FMLA by placing [him] on a second DML after previously being advised by the U.S. Department of Labor that the action was a violation of the FMLA." Opp. at 6. This April 2002 DML was removed in August 2002. *Coleman I,* Compl. ¶ 70.

Mr. Coleman filed a second charge with the EEOC on July 16, 2002, complaining that Pepco had "repeatedly and continuously retaliated against him as a result of him having reasonably opposed practices he believed to be discriminatory." Opp. at 6. By letter dated January 31, 2003, the EEOC dismissed his charge and issued a right-to-sue letter. Mr. Coleman states that the EEOC's letter did not reach him until February 18, 2003. On May 17, 2003, Mr. Coleman states that he filed an application with the Court for leave to proceed *in forma pauperis* ("IFP"), which would allow him to avoid paying the filing fee. He also states that a copy of the instant complaint was attached to his IFP applica-

tion. Mr. Coleman was notified on June 3, 2003, that his IFP application was denied. He thereafter paid the filing fee and filed the complaint in *Coleman II* on June 4, 2003. Opp. at 6.

On June 25, 2003, the United States Postal Service issued an apology to Mr. Coleman for repeated failures in mail delivery to his home address.

## LEGAL STANDARDS

■ A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure "tests the legal sufficiency of the complaint." *ACLU Found. of S. Cal. v. Barr,* 952 F.2d 457, 472 (D.C.Cir.1991). Under 12(b)(6), a court "does not test whether the plaintiff will prevail on the merits, but instead whether the claimant has properly stated a claim." *Price v. Crestar Secs. Corp.,* 44 F.Supp.2d 351, 353 (D.D.C.1999). In reviewing such a motion, the court accepts the allegations in the non-movant's pleading as true and draws all reasonable inferences in the non-movant's favor. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Sinclair v. Kleindienst,* 711 F.2d 291, 293 (D.C.Cir.1983). However, the court need not accept as true plaintiff's legal conclusions. *See Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). A complaint may not be dismissed on a Rule 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99.

## ANALYSIS

The question raised by the motion to dismiss is whether Mr. Coleman timely brought his EEO complaint to this Court. There are two aspects to the argument presented by the defendant: first, that Mr. Coleman did not timely file his lawsuit

within 90 days of receipt of the January 31, 2003, right-to-sue letter from the EEOC and, second, that the complaint fails to identify any acts of retaliation within 300 days of his July 2002 EEO charge or within one year of filing the complaint in *Coleman II*. These will be addressed in turn.

### A. *Timely Filing of the Complaint*

■■■ A charging party must file a court complaint within 90 days of receipt of the right-to-sue letter from the EEOC or the party's right to sue will be lost. *See* 42 U.S.C. § 2000e–5(f)(1). The Washington Field Office of the EEOC issued a right-to-sue letter to Mr. Coleman dated January 31, 2003. Compl. ¶ 3. The presumed date of a party's receipt of a right-to-sue letter from the EEOC is three days after issuance. *See Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 148 n. 1, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). This presumption can be overcome with proof of receipt at another date and Mr. Coleman asserts that he did not receive the right-to-sue letter until February 18, 2003. He claims problems with his mail delivery and backs this up with a letter of apology from the United States Postal Service for repeated letters returned to senders, rather than delivered to him, although they were properly addressed.

For purposes of a motion to dismiss, complaint allegations are deemed true and a plaintiff is given the benefit of all reasonable inferences therefrom. The Court has no reason to doubt the plaintiff's explanation or statement that he received his right-to-sue letter on February 18, 2003. Ninety days thereafter would be May 17, 2003, which was a Saturday and a day when the court was not open. However, the court's records contain a copy of Mr. Coleman's complaint with a date stamp on the back of the last page noting: "RECEIVED U.S. COURT OF APPEALS FOR THE D.C. CIRCUIT 2003 MAY 17 AM 12:17 FILING DEPOSITORY." [2]

In addition, when Mr. Coleman's IFP application was denied, he re-filed his complaint and paid the filing fee on June 4, 2003. Were it necessary to do so, the Court would toll the 90–day period between the filing of the IFP petition and the June 4, 2003, filing of the complaint to ensure that the complaint would be timely. *See Williams–Guice v. Bd. of Educ.,* 45 F.3d 161, 164–65 (7th Cir.1995). Tolling is unnecessary where, as here, the complaint was timely filed.

### B. *Failure to State a Claim*

■■■ Because the District of Columbia has its own Human Rights Commission that accepts and investigates charges of employment discrimination, the statute of limitations for filing a charge alleging a violation of Title VII in D.C. is 300 days. 42 U.S.C. § 2000e–5(e)(1); *see also Singletary v. District of Columbia,* 225 F.Supp.2d 43, 60 (D.D.C.2002). Mr. Coleman filed his second EEOC charge, complaining of retaliation, on July 16, 2002. Pepco argues that all of Mr. Coleman's alleged incidents of retaliation took place more than 300 days prior to July 16, 2002, which bars his Title VII claims in this suit.

**2.** The federal courthouse in Washington, D.C., houses both the District Court and the Court of Appeals for the District of Columbia Circuit. It appears that Mr. Coleman stamped his complaint with the date stamp for the Court of Appeals, rather than the date stamp for the District Court, before depositing his complaint in the night depository. Under the Federal Rules of Civil Procedure, a pleading due on a weekend has a deadline of the following business day, in this case, Monday, May 19, 2003. FED R. CIV. P. 6(a). Depositing his complaint over the weekend had the effect of its delivery to the clerk's office in the District Court on Monday.

The DCHRA has a one-year statute of limitations for filing suit on alleged discrimination. D.C. CODE ANN. § 2–1403.16(a); *see also Boulton v. Inst. of Int'l Educ.*, 808 A.2d 499, 503 (D.C.2002). Pepco also argues that all of Mr. Coleman's alleged incidents of retaliation took place more than one year prior to filing this lawsuit, so that his DCHRA claim is also time barred.

The complaint allegations support Pepco's argument. The complaint identifies the most recent instance of protected activity by Mr. Coleman prior to his July 2002 EEOC charge as his May 3, 2000 charge to the EEOC. Compl. ¶ 35. The only specific retaliatory acts alleged by him occurred late that same month in 2000. *Id.* ¶¶ 38 & 40–41. The complaint alleges a "substantial injury" that occurred on or about June 14, 2000, at the time that Mr. Coleman visited the hospital. *Id.* ¶ 47. The latest event named is a meeting with a doctor in Pepco's medical department that occurred on or about April 17, 2001. *Id.* ¶ 49. The complaint also alleges various, undated and allegedly retaliatory acts that occurred "[s]hortly following the expiration of the time period within which Plaintiff could exercise his right to sue" on the May 3, 2000 charge, *id.* ¶ 44, *i.e.*, shortly after December 29, 2000.

Mr. Coleman relies on his January 14, 2002 termination and the April 1, 2002 DML, issued when he returned to work, as retaliatory harassing incidents that occurred in the 300 days prior to his July 16, 2002 EEOC charge. Opp. at 5–6; *see* Compl. ¶ 44. He identifies the alleged continuing violation as comprising the January 4, 2001 denial of promotion; an April 2001 statement by a Pepco manager that Mr. Coleman would never be promoted; the February 2, 2001 DML; the January 14, 2002 termination; and the April 1, 2002 DML. Supp. I at 2–6.[3]

The Supreme Court recently held, unambiguously, that Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). In contrast, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for purposes of assessing liability, so long as any act contributing to the hostile environment takes place within the statutory time period." *Id.* Thus, "[e]ach incident of discrimination and *each retaliatory adverse employment decision* constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114, 122 S.Ct. 2061 (emphasis added). "There is simply no indication that the term 'practice' converts related discrete acts into a single unlawful practice for the purposes of timely filing." *Id.* at 111, 122 S.Ct. 2061. This distinction is understandable. A hostile environment is a single discriminatory purpose usually evidenced by multiple slights, statements, or actions that individually might prove nothing except in hindsight. Retaliation usually is shown by discrete acts of discrimination that are more visible. The record here demonstrates the point: the alleged continuing violation is, in fact, comprised of separate and distinct acts, such as Mr. Coleman's termination, two disciplinary DMLs, and a statement that he will never be promoted. *Morgan* teaches that dis-

**3.** Mr. Coleman confuses incidents of harassment with instances of protected activity. The Court accepts Mr. Coleman's April 2001 mediation session, February 2001 meeting with Ms. Williams of Human Resources, March 2002 arbitration hearing, and April 2002 return to work as instances of protected activity, rather than incidents of harassment or discrimination.

crete claims of retaliation that are time-barred do not become timely by alleging one timely retaliatory act related to earlier, untimely, retaliatory acts. *Id.* "While [Mr. Coleman] alleged that he suffered from numerous ... retaliatory acts ... only incidents that took place within the timely filing period are actionable." *Id.* at 114, 122 S.Ct. 2061. The Title VII claims arising from acts that occurred more than 300–days prior to July 16, 2002, must be dismissed.

■ Likewise, all the DCHRA claims that occurred more than one year prior to the filing of the complaint in *Coleman II* are time barred. The D.C. Court of Appeals has adopted, "for cases filed under the DCHRA, the Supreme Court's hostile work environment analysis governing federal civil rights claims as it is set forth in *Morgan.*" *Lively v. Flexible Packaging Ass'n,* 830 A.2d 874, 889–90 (D.C.2003) ("*Morgan* highlights the fundamental difference between a discrete discriminatory act and a hostile work environment claim by emphasizing both the cumulative effect of incidents comprising that [latter] claim, and its unitary nature—that is, it is one unlawful employment practice."). The D.C. Court of Appeals also quoted *Morgan* to the effect that a discrete retaliatory act

"occurs" on the day that it happens. *Id.* at 889. Thus, while the local court has not explicitly adopted *Morgan* to hold that a continuing violation theory is unavailable under the DCHRA for cases involving discrete retaliatory acts, most probably because *Lively* did not raise the question, the Court anticipates that it will do so when the occasion arises. *See Id.* at 887 (The D.C. Court of Appeals has " 'often looked to cases construing Title VII to aid us in construing the [DCHRA].' "). *But see Boulton v. Inst. of Int'l Educ.,* 808 A.2d 499, 504 (D.C.2002) (analyzing a claim of retaliation under continuing violations theory, but finding plaintiff had not established a continuing violation). On the facts presented by Mr. Coleman, which consist entirely of discrete acts, the Court finds that the continuing violation theory does not resuscitate his untimely allegations of retaliation under the DCHRA.[4]

■ The Court also finds that Mr. Coleman's discharge, which might otherwise be timely raised, cannot be re-litigated under a Title VII or DCHRA theory when it has already been tried, and formally dismissed, as an alleged violation of the FMLA.[5] Under the doctrine of *res judicata,* "a final judgment on the merits in a

---

4. Even if the continuing violation theory were available, the Court finds that it does not apply to these facts. Mr. Coleman does not point to a single retaliatory incident that occurred in the one year prior to the filing of the complaint in *Coleman II* on May 17, 2003. The most recent pre-complaint alleged retaliatory act was the April 1, 2002 DML, more than one year earlier. The next allegedly retaliatory event occurred on March 13, 2003, when Pepco issued a written warning to Mr. Coleman for violations of the attendance policy. *See* Motion for Preliminary Injunction at 2 (interpreted by the Court as a motion to amend the complaint and to institute *Coleman III* ). This gap in time and the nature of the activity does not admit a continuing violation theory of retaliation.

5. While Pepco has not raised preclusion as a defense, this case presents a "special circumstance" where the Court may raise it *sua sponte. Arizona v. California,* 530 U.S. 392, 394–95, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) ("Most notably, 'if a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte,* even though the defense has not been raised. This result is fully consistent with the policies underlying *res judicata:* it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste.' ") (quoting *United States v. Sioux Nation,* 448 U.S. 371, 432 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980) (Rehnquist, J., dissenting) (citations omitted)).

prior suit involving the same parties or their privies bars subsequent suits based on the same cause of action." *I.A.M. Nat'l Pension Fund, Benefit Plan A v. Industrial Gear Mfg. Co.*, 723 F.2d 944, 946–47 (D.C.Cir.1983). "The four factors that must exist for *res judicata* to apply are (1) an identity of parties in both suits; (2) a judgment rendered by a court of competent jurisdiction; (3) a final judgment on the merits; and (4) the same cause of action in both suits." *Polsby v. Thompson*, 201 F.Supp.2d 45, 48 (D.D.C.2002). A final decision on the merits prohibits any future case arising from "the same 'nucleus of facts,' for 'it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies.'" *Page v. United States*, 729 F.2d 818, 820 (D.C.Cir.1984) (quoting *Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1234 (2d Cir.1977)); *see also Woods v. Dunlop Tire Corp.*, 972 F.2d 36 (2d Cir.1992); *Booth v. Quantum Chem. Corp.*, 942 F.Supp. 580, 584 (S.D.Ga.1996). All of these factors are met and bar relitigation of Mr. Coleman's discharge.

Mr. Coleman filed suit against Pepco on February 13, 2003, directly challenging his discharge as a violation of the FMLA with no mention of Title VII, the DCHRA or retaliatory harassment. He received his right-to-sue letter on which the instant suit is based on February 18, 2003. The motion to dismiss the complaint in *Coleman I* was fully briefed on April 22, 2004, and was decided by the Court solely on those papers. Following this briefing, and without amending the *Coleman I* complaint, Mr. Coleman filed *Coleman II* on May 17, 2003. Mr. Coleman had ample time to amend the *Coleman I* complaint prior to

dismissal. He cannot now rely on the identical facts to present a different theory of law on which recovery might be had. *Booth*, 942 F.Supp. at 584 (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 485, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)) (Title VII litigants are not relieved from preclusive effect of *res judicata*.); *Brown v. Ky., Dep't for Human Res.*, No. 82–29, 1987 U.S. Dist. LEXIS 12275, at *2–3 (*Res judicata* applies to bar second action where employee received right-to sue-letter after she filed initial complaint but nine months before earlier claims were dismissed and employee filed second suit rather than amending initial complaint).[6]

## CONCLUSION

Although Mr. Coleman's complaint herein (*Coleman II*) was timely filed after he received his right-to-sue notice from the EEOC, his Title VII claim is barred in part by the doctrine of *res judicata* and in part because he did not timely file a charge with the EEOC. His DCHRA claim is untimely as not having been filed within one year of the events at issue and by the doctrine of *res judicata*. The Motion to Dismiss is therefore GRANTED.

Mr. Coleman has also filed a Motion for a Preliminary Injunction and a Motion for Leave to Amend the Preliminary Injunction, which the Court construes as a motion to amend the complaint. The Court grants leave to amend the Complaint and the Motion for Preliminary Injunction. Mr. Coleman shall file an amended complaint by March 29, 2004, or this matter shall be dismissed. Should any lawyer assist Mr. Coleman with this or any other pleading, he or she shall properly identify himself or herself.

A separate Order accompanies this Memorandum Opinion.

---

**6.** The arbitration pursuant to the collective bargaining agreement did not preclude Mr. Coleman from advancing statutory claims in court. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 59–60, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

## ORDER

For the reasons stated in the Memorandum Opinion separately and contemporaneously issued this 17th day of March, 2004, it is hereby

**ORDERED** that Defendant's Motion to Dismiss is **GRANTED**; and it is

**FURTHER ORDERED** that Plaintiff's Motion to Amend his Motion for Preliminary Injunction is **GRANTED**; and it is

**FURTHER ORDERED** that Plaintiff is **GRANTED** leave to file an Amended Complaint. Plaintiff shall file an Amended Complaint by March 29, 2004, or this matter shall be dismissed; and it is

**FURTHER ORDERED** that should any lawyer assist Mr. Coleman with this or any other pleading, he or she shall properly identify himself or herself

**SO ORDERED.**